Weldon, J.,
delivered the opinion of the court:
The claimant was on the 28th day of May, 1883, appointed a paymaster’s yeoman in the United States Navy as herein stated, and served continuously under said appointment from the 28th day of May 1883, to May, 1885. During said period, in addition to the performance of his duty as such yeoman, he also rendered service as a recorder in the United States Coast and Geodetic Survey.
The service in said Survey consisted in recording soundings and angles, making total computations, measuring angles, and plotting.
The order of his appointment is as follows:
“Naval Paymaster’s Ox vice,
“IT. S. Coast Survey Vessels,
“ Baltimore, Md., 23th May, 1883.
“John B. Goode,

“Coast Survey Steamer JEndeavor, Philadelphia, Penn’a:

“ Sir : In accordance with General Order No. 245 of the honorable Secretary of the Navy, you are hereby appointed a paymaster’s yeoman of the 3d class, in the-U. S. Navy. You will report at once to Lieutenant John T. Sullivan, U. S. N., com- *265 man ding Coast Survey steamer JEndeavor, for duty ou board of that vessel.
“ Very respectfully,
“ John M. Thompson,
“ Paymaster, U. 8. N.
“Reported May 28th, 1883.
“Jno. T. Sullivan,
“Lieut. U. 8. N., Commanding.”
While in the performance of his duties, in connection with the Geodetic Survey on board said ship, he performed the duties of a paymaster’s yeoman, for which he has been paid.
This suit was brought to recover a reasonable compensation for his services in the Coast Survey.
It is contended by ihe defendants, that at the time the claimant became connected with the Navy, that it was understood and agreed, that no additional compensation than that allowed a paymaster’s yeoman, would be paid to the claimant, and that he attached himself to the surveying department, in order to relieve himself, from the privations ordinarily incident to the position of paymaster’s yeoman ; that whatever service he rendered the Coast Survey, was to be paid for, in his compensation as a yeoman in the Navy.
The following letter is admitted by claimant, as having the force of the writer’s deposition, subject to the competency of such testimony.
“153 States Avenue, Atlantic City, N. J.,
“August 5th, 1889.
“ Lieut. Comdr. C. M. Thomas, U, S. Navy,
“Hydrographic Inspector C. and 0: Survey,
“ Washington, V. C.:
“Sib: In reply to your communication asking for information relating to the understanding I had with Mr. Goode, when employing him as pay. yeo. on board of the Endeavor, I have to state that before engaging him I was particular to describe the subordinate and monotonous duties of a recorder in order to remove any false impressions he might have entertained, and told him the rate of compensation per month. This was the only understanding I had with him. ELe very gladly accepted these conditions and was appointed.
“I am unable to recall any claim on me for extra pay, or an expressed unwillingness to perform the duties assigned him without extra compensation.
“Very respectfully,
“Jno. T. Sullivan,

“Lieutenant, U. 8. N., retired

*266 It does not appear that at the time the claimant was assigned to the performance of the duty for which he sued, or during the time of its performance, that he refused to perform the service, or that any compensation beyond that of a paymaster’s yeoman (except a small increase of allowance, which was paid him for most of the time), was agreed to be paid. During the time, the claimant was employed in the service, he never demanded payment, or notified any of the officers of the United States that he intended to charge the Government, anything beyond the pay of a yeoman, except when his subsistence in some particular was curtailed. He made application to the Coast Survey Office to be paid for the deduction, but it was not paid.
As a result, of the performance of the duties incident to his relations to the surveying party, he had on board the ship, a standing which as a mere yeoman, he was not entitled to hold, and which relieved him from many of the annoying features of that position. The claimant it is conceded performed responsible duties disconnected with his position as a paymaster’s yeoman, for which he has received no pay, but it is contended that it was the implied agreement that he was not to receive pay beyond his compensation as paymaster’s yeoman.
It is insisted by claimant, that his appointment as yeoman in the Navy, has the force of a contract, and the terms of that contract are, that he is to perform the duties of that position, and receive the pay allowed by law; and to permit those terms to be changed, would be a violatiou of that long-established rule of law, that written contracts can not be varied by parol evidence.
There is no doubt as to the correctness and necessity of that princip e; but does its application in this case, prevent the defendants, from showing that the claimant was to receive no pay, beyond what he has already received in the extra allowance, and the emoluments incident to the position of a yoeman in the Havy. Conceding that the appointment of claimant had the legal effect of a contract, and that the duties prescribed bylaw measured the responsibility and obligation of the claimant, it is sufficient to say that he is not suing on that contract, but upon the implied contract of an obligation to pay for other services.
It is contended that this case is governed by the law deter *267 mined in the case of Collier v. The United States (22 C. Cls. R. 130); in that case it is said :
“ The court is of the opinion that the service which the claimant rendered having been one which could not have been legally required of him either by the Secretary of the Treasury or the Commissioner of Agriculture, and having been rendered with the knowledge and consent qf his superior officer, and for a Department having no official control of him, and to which he owed no service whatever, and employment, moreover, being within the legal discretion of the Secretary of the Treasury and for the benefit of the Government the case is necessarily ruled by the decisions of the Supreme Court in the cases of Converse v. The United States (21 How., 463); The United States v. Brindle (110 U. S. R., 688), and The United States v. Saunders (120 id., 126).”
The distinction between the case at bar, and the case cited is, that in this case, the services were rendered under circumstances indicating that they were not to be paid for, were performed during the time claimant is presumed by law to be engaged in other duties, for which he has been paid, and in consideration of the fact, that as connected with the Geodetic Survey, he was relieved from the hardships incident to his real position. While as paymaster’s yeoman, he was not compelled to render the services to the Survey, if he performed them without objection, and upon'the implied condition, that he'was not to charge for them, then .he is estopped by his own act, and can not recover in this proceeding.
There is no evidence that there was an express agreement as to the compensation, and the claim is founded upon an implied obligation of payment. We are unable to find from the evidence that there was an implied, or express contract, to pay for the services what they were reasonably worth, and without such a finding there can be no right of recovery.
It is a well settled principle of the law, if a person renders a service without intending to charge for the same, and this is so understood by the other party, no recovery can be had for such service. It is not necessary to discuss any other view, which might be taken, as to the law applicable to this transaction, it is sufficient for the purpose of our conclusion to rely upon what has been said. The testimony of the claimant is, as we can see, a most truthful statement of the facts, and upon those facts we determine as a legal conclusion, that the petition be dismissed.