## WOODWELL v. UNITED STATES.

APPEAL· FROM THE COURT OF CLAIMS.

No. 143.　Argued April 8, 12, 1909.—Decided May 17, 1909.

Where there is no specific provision in the appropriation for government work and there is no intention of the department in which a Government employé is employed to call upon him to fill another separate and distinct office, his designation by the head of his department to do certain work for another department does not entitle him to extra compensation; and, under § 1765, Rev. Stat., he cannot be allowed extra compensation therefor, even though the services be of value to the Government, are rendered out of hours, and are in addition to the full performance of his regular employment.

41 C. Cl. 357, affirmed.

THE facts are stated in the opinion.

*Mr. William H. Robeson* for appellant.

*Mr. Assistant Attorney General John Q. Thompson,* with whom *Mr. Clark McKercher* was on the brief, for The United States.

MR. JUSTICE WHITE delivered the opinion of the court.

This appeal is from a judgment of the Court of Claims, dismissing a petition filed by the appellant to recover from the United States the sum of $3,675.　41 Ct. Cl. 357.　From the findings of the court below the facts upon which the claim was based are substantially as follows: Woodwell, the appellant, is by profession a mechanical and electrical engineer. From a date prior to March 3, 1901, up to the time of the bringing of this suit, he was an inspector of electric light plants under the jurisdiction of the Treasury Department, receiving a salary of $2,000 per annum.　In the sundry civil

act, approved March 3, 1901, the following appropriation was made (31 Stat. 1156):

"For the establishment of electric lighting plants for the buildings occupied by the offices of the Department of the Interior, the Patent Office building, the old Post Office building, now occupied by the General Land and Indian Bureaus, and the Pension Office building, and for improvements in the heating of the Patent Office building, including necessary conduits, the laying and construction of which is hereby authorized, $74,000."

On March 11, 1901, the Secretary of the Interior sent to the Secretary of the Treasury a communication, in which, after reciting the terms of the appropriation act above referred to, he said:

"When this item was under consideration the Committee on Appropriation of the House of Representatives secured, through the Assistant Superintendent of the Treasury, the itemized estimate of cost of the proposed work upon which the amount of appropriation is based, and, at the hearing before the committee, it was also indicated by members thereof that it would be expected that the projected work should conform to the estimate and the general plan outlined therein.

"I have, therefore, to request that, if practicable, some competent person connected with the Treasury Department, expert in such matters, may be authorized to prepare detailed plans and specifications, upon which proposals for the work contemplated in the appropriation may be called for at an early date."

On March 14, 1901, the Secretary of the Treasury, acknowledging the receipt of this letter, said:

"In reply you are informed that the work incident to the preparation of the plans and specifications can be performed under the supervision of a qualified employé of this office, who is familiar with the requirements, but as the work will involve the employment of draftsmen and other persons who cannot be supplied from the regular force of this department

without detriment to its business, it is assumed that such
service can be paid for from the appropriation provided for
the installation of the plant. Such expense will not exceed
$500, including the expense incident to a general inspection
of the work during the period of the installation.

"It is the judgment of this department that the installa-
tion can be completed in all its details in the most satisfactory
manner without exceeding the limits of the appropriation pro-
vided therefor—namely, $74,000."

In answering this letter the Secretary of the Interior said:

"Referring to your letter of March 14, 1901, in which you
state that in compliance with the request of this department
a competent person connected with the Treasury Department
will be authorized to prepare necessary plans and specifica-
tions covering the installation of the electric lighting plant
for the buildings of this department, and to your suggestion
that the work will involve the employment of draftsmen and
other persons who cannot be supplied from the regular force
of the Treasury Department, and which would involve an ex-
pense not to exceed $500, which would include the expense
incident to the general inspection of the work during the
period of installation, I have the honor to inclose herewith a
copy of the decision of the Comptroller of the Treasury, to
whom the matter was submitted by this department, in which
the conclusion is reached that prior to July 1, 1901, the pre-
liminary expenses necessary to carry into effect the appropria-
tion for the electric lighting plant may be incurred, although
payment therefor cannot be made previous to that date.

"The department would be glad to have the preliminary
work commenced at the earliest practical date, and would be
pleased to consider any recommendations as to the employ-
ment of the services of draftsmen, etc., referred to in your
letter. If such services cannot be procured upon the terms
named by the Comptroller, it is believed that it can, in the
meantime, be furnished by detail from some branch of this
department."

And on May 10, 1901, the Secretary of the Treasury notified the Secretary of the Interior as follows:

"Referring to your letter of May 8, 1901, you are informed that Mr. J. E. Woodwell, inspector of electric light plants, has been directed to confer with E. M. Dawson, chief clerk, Department of the Interior, relative to the installation of an electric light, heat and power plant in the old Post Office Department building in this city."

Subsequently, the Secretary of the Interior made the following order, an official copy of which was sent to Mr. Woodwell through the Secretary of the Treasury:

"Order.

"Department of the Interior,
"Washington, June 21, 1901.

"A board to consist of Mr. Edward M. Dawson, chief clerk of the department; Mr. J. E. Woodwell, inspector of electric light plants, Treasury Department, and Mr. Joseph S. Hill, engineer, etc., 'General Post Office,' is hereby constituted to, from time to time, open bids and recommend awards of contracts for the work embraced in the installation of the electric lighting plant for the buildings of the Interior Department, and in the improvement of the heating of the Patent Office building.

"The board will meet at the office of the chief clerk of the department at such time as may be designated by advertisements for opening proposals for the work."

On November 23, 1901, the Acting Secretary of the Treasury sent the following communication:

"Referring to your letter of November 21, 1901, requesting that Mr. J. E. Woodwell, inspector of electric light plants, Treasury Department, be instructed to conduct a test of the engines and dynamos being manufactured by the Ridgeway Dynamo and Engine Company, Ridgeway, Pa., for the Interior Department, I have the honor to state that, owing to prior and important instructions, it will be impractical for

Mr. Woodwell to make the test the 25th instant, as desired by you.

"You are advised, however, that, if the matter can be held in abeyance until December 2, 1901, Mr. Woodwell will be instructed to make the test."

Thereafter the following from the Acting Secretary of the Interior was received by Mr. Woodwell:

"Department of the Interior,
"Washington, January 2, 1902.

"Permission having been obtained from the Secretary of the Treasury for you to perform such service, you are hereby authorized and directed to proceed to Ridgeway, Pa., as the representative of this department at shop tests to be made, commencing on Monday next, the 6th instant, of the engines and dynamos to be furnished by the Ridgeway Dynamo and Engine Company, under contract with this department.

"There is herewith inclosed, for your information and guidance, a copy of the specifications of the contract, wherein it is provided that 'The regulation, guaranteed efficiency, heating effect, and insulation resistance shall be determined by actual test in the presence of the department's authorized inspector, who shall determine test conditions. The tests to be made at the shops where the dynamos are constructed, upon due notification by contractors of their readiness to commence said test, and at the expense of the contractor, except traveling and other necessary expenses of department's agent. Should the test be delayed or require repetition for any reason for which the contractor is justly responsible, the cost of the delayed or any subsequent test, including the traveling and other necessary expenses of the department's agent, shall be at the expense of the contractor.'

"Mr. L. K. Sager, of this department (Patent Office), will be detailed to accompany you and assist in making the tests.

"Your actual expenses while engaged upon this service

will be paid by this department upon presentation of proper accounts and vouchers from funds available."

Because of the foregoing correspondence Mr. Woodwell, as a mechanical and electrical engineer, performed certain services in and about the installation of said electric lighting and heating plant, between the tenth day of May, 1901, and the first day of February, 1902, and devoted 897 hours to said service, and also necessarily expended $110 in connection therewith.

The services rendered were performed by Woodwell outside of his regular office hours as an employé in the Treasury Department, and during the time when the services were rendered he also fully discharged his duties as such employé of the Treasury Department.

While the Court of Claims declared that the facts above recited presented a strong equitable case in favor of the claimant, entitling him to a reasonable allowance if authority of law existed therefor, it nevertheless entered judgment for the Government upon the ground that the law—as contained in §§ 1763, 1764 and 1765 of the Revised Statutes, copied in the margin [1]—forbade the awarding of any compensation.

[1] SEC. 1763. No person who holds an office, the salary or annual compensation attached to which amounts to the sum of two thousand five hundred dollars, shall receive compensation for discharging the duties of any other office, unless expressly authorized by law.

SEC. 1764. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other department; and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law.

SEC. 1765. No officer in any branch of the public service, or any other person whose salary, pay or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance or compensation.

It was held that the facts did not make out a case of the holding by one person at the same time of two distinct offices, places, or employments, each having its own duties and its own compensation, but was merely a case of the performance of extra services by a Government employé, for the performance of which, even if it be assumed that there was authority of law therefor, nevertheless there was no "appropriation therefor explicitly stating that it was for such additional pay, extra allowance, or compensation."

We see no reason to doubt the correctness of the reasoning and conclusion of the court below. A succinct history of the legislation respecting the question of extra compensation for Government employés is contained in the case of *United States* v. *King*, 147 U. S. 676, 679–681. The decision of this case does not require that we should restate that history. If the facts presented by the record before us exhibit a case merely of the performances of extra services and not one of the filling of two distinct places, offices or employments, payment for such extra service is plainly prohibited by the terms of § 1765, Rev. Stat. That section was taken from two statutes, the first passed March 3, 1839 (5 Stat. 349, c. 83), and the second August 23, 1842 (5 Stat. 510, c. 183), and may be considered to be to some extent *in pari materia* with §§ 1763 and 1764. *United States* v. *Saunders*, 120 U. S. 126. As said in the *Saunders* case, speaking of §§ 1763–1765:

"Taking these sections all together, the purpose of this legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise—which is intended to cover all the services which, as such officer, he may be called upon to render—from receiving extra compensation, additional allowances, or pay for other services which may be required of him either by act of Congress or by order of the head of his department, or in any other mode added to or connected with the regular duties of the place which he holds; but that

they have no application to the case of two distinct offices, places or employments, each of which has its own duties and its own compensation, which offices may both be held by one person at the same time.   In the latter case he is in the eye of the law two officers, or holds two places or appointments, the functions of which are separate and distinct, and, according to all the decisions, he is in such case entitled to recover the two compensations.   In the former case he performs the added duties under his appointment to a single place, and the statute has provided that he shall receive no additional compensation for that class of duties unless it is so provided by special legislation."

Not only was there no specific provision in the appropriation for the employment and compensation of an electrical engineer to prepare plans and supervise the construction and installation of the plant in question, but the correspondence does not permit an inference that it was the intention of the Department of the Interior to call upon Mr. Woodwell to fill a separate and distinct office or employment from that which he already held under the Government.   The letter of the Secretary of the Interior of date March 11, 1901, imports that the estimate upon which the appropriation was based was made upon the assumption that such work as was desired to be performed by the experts requested from the Treasury Department would be without extra cost to the Government, and the whole correspondence tends to negate the conception of either an express or implied contract between the Secretary of the Interior and Mr. Woodwell, by which the latter was to perform services for which he was to be specially compensated out of the appropriation in question or otherwise.   The request made of the Secretary of the Treasury was not that he should name a competent person with whom the Secretary of the Interior might contract for the performance of the desired services, but was that he should "authorize," that is, designate, "a competent person" to do such work.   The reply to such request, dated March 14, 1901, we think makes evident the

fact that it was not expected that the person who was to be supplied from the regular force of the Treasury Department, because it could be, done without detriment to the public service, would be additionally compensated. Indeed, any inference that such thought was entertained by the Secretary of the Treasury is rebutted by the circumstance that in his letter he directed the attention of the Secretary of the Interior to the fact that an expense of about $500 would be necessary for the employment of draftsmen and others who could not be supplied by the Treasury Department, and that this sum would be regarded as sufficient for "the expense incident to a general inspection of the work during the period of installation." The direction given to Mr. Woodwell to confer with the chief clerk of the Department of the Interior "relative to the installation of an electric light, heating and power plant in the old Post Office Department building . . ." was addressed to him in his capacity of "inspector of electric light plants" in the Treasury Department. Presumptively, the aid which Mr. Woodwell rendered by direction of the Secretary of the Treasury to the Department of the Interior was done by him in and by virtue of the order and direction of his superior officer, and was not, therefore, a distinct employment. Certainly it cannot be said that Mr. Woodwell, whatever may have been the value of his services, was called upon to render a service specially required by an existing law and for the performance of which the remuneration was fixed by law. These conclusions clearly bring the case within the prohibitions against payment contained in § 1765, Rev. Stat. As there is no contention in argument respecting the claim for expenses ($110), which it is assumed has been paid, we eliminate it from consideration.

*Affirmed.*