## WARD v. UNITED STATES.
### No. 13392.

Circuit Court of Appeals, Eighth Circuit.
Dec. 12, 1946.

Lee Ward, of Benton, Ark., appellant, pro se.

W. H. Gregory, Asst. U. S. Atty., and James T. Gooch, U. S. Atty., both of Little Rock, Ark., for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

This is an action brought under the Tucker Act, 28 U.S.C.A. § 41(20), to recover the reasonable value of legal services furnished the United States allegedly in reliance upon an implied contract. The United States moved to dismiss the complaint for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. The District Court entered judgment upon an order granting the motion to dismiss, and this appeal follows.

The appellant, Lee Ward, an attorney, enlisted in the Navy as a yeoman in August, 1942. From June, 1944, until he was honorably discharged from the service in September, 1945, he performed no duties as yeoman, but was assigned to, and performed, the duties of a land title attorney in the Real Estate Division Office of the Navy, in Honolulu, in connection with the acquisition of lands for naval use. For this service he received only the pay and allowances of a Chief Yeoman. Unsuccessful efforts were made by him, or on his behalf, to secure more adequate compensation or to be returned to the ordinary duties of a yeoman. After Ward was discharged, he brought this action, asserting that the government had impliedly agreed to pay him the reasonable value of the legal services which he had rendered as a land title attorney. Stated simply, his contention is that by relieving him of his duties as yeoman and using him as a land title attorney, the government obligated itself to pay him the value of his legal services less what it paid him as a yeoman.

The District Court concluded that Ward could not recover, because of the statutes which prevent one in government service, whose compensation is fixed by law, from recovering extra pay for the performance of additional services, unless Congress has authorized the services and provided for their payment.[1]

We agree with the District Court that Ward's claim is not one upon which relief can be granted. Our conclusion is based

---

[1] The statutes relied upon by the government and the District Court are Sections 69 and 70 of Title 5 U.S.C.A., reading as follows:

"§ 69. Extra services. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other department; and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law. (R.S. § 1764.)

"§ 70. Extra allowances. No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation. (R.S. § 1765.)"

not alone upon the statutes relating to additional compensation for added services (the meaning and effect of which statutes, after more than one hundred years, are apparently still debatable),[2] but also upon the ground that no promise on the part of the government to pay him can be implied from the conceded facts of his case.

Ward has made an ingenious and persuasive argument. He bases it upon the decisions of the Supreme Court in Converse v. United States, 21 How. 463, 62 U.S. 463, 16 L.Ed. 192, United States v. Brindle, 110 U.S. 688, 4 S.Ct. 180, 28 L.Ed. 286, and United States v. Saunders, 120 U.S. 126, 7 S.Ct. 467, 30 L.Ed. 594. Those cases are authority for the proposition that a person in the government service who is required to fill two positions, the duties of which are unrelated and the compensation for which is fixed and payable by law, is entitled to the pay of both positions.[3]

---

[2] See and compare: Lewis v. United States, 1917, 244 U.S. 134, 37 S.Ct. 570, 61 L.Ed. 1039; United States v. Ross, 1916, 239 U.S. 530, 36 S.Ct. 198, 60 L. Ed. 422; Evans v. United States, 1913, 226 U.S. 567, 33 S.Ct. 133, 57 L.Ed. 353; Woodwell v. United States, 1909, 214 U.S. 82, 29 S.Ct. 576, 53 L.Ed. 919; Bartlett v. United States, 1905, 197 U.S. 230, 25 S.Ct. 433, 49 L.Ed. 735; United States v. Van Duzee, 1902, 185 U.S. 278, 22 S.Ct. 648, 46 L.Ed. 909; Glavey v. United States, 1901, 182 U.S. 595, 21 S.Ct. 891, 45 L.Ed. 1247; United States v. Matthews, 1899, 173 U.S. 381, 19 S.Ct. 413, 43 L.Ed. 738; United States v. Johnson, 1899, 173 U.S. 363, 19 S.Ct. 427, 43 L.Ed. 731; United States v. Garlinger, 1898, 169 U.S. 316, 18 S.Ct. 364, 42 L.Ed. 762; United States v. Crosthwaite, 1897, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507; Gibson v. Peters, 1893, 150 U.S. 342, 14 S.Ct. 134, 37 L.Ed. 1104; Mullett's Administratrix v. United States, 1893, 150 U.S. 566, 14 S.Ct. 190, 37 L.Ed. 1184; United States v. Post, 1893, 148 U.S. 124, 13 S.Ct. 567, 37 L.Ed. 392; United States v. Payne, 1893, 147 U.S. 687, 13 S.Ct. 442, 37 L. Ed. 332; United States v. Jones, 1893, 147 U.S. 672, 13 S.Ct. 437, 37 L.Ed. 325; United States v. King, 1893, 147 U.S. 676, 13 S.Ct. 439, 37 L.Ed. 328; Badeau v. United States, 1889, 130 U.S. 439, 9 S.Ct. 579, 32 L.Ed. 997; United States v. Saunders, 1887, 120 U.S. 126, 7 S.Ct. 467, 30 L.Ed. 594; United States v. Brindle, 1884, 110 U.S. 688, 4 S.Ct. 180, 28 L.Ed. 286; Folger v. United States, 1880, 103 U.S. 30, 26 L.Ed. 364; Hall v. United States, 1875, 91 U.S. 559, 23 L.Ed. 446; Stansbury v. United States, 1868, 8 Wall. 33, 75 U.S. 33, 19 L.Ed. 315; United States v. Shoemaker, 1868, 7 Wall. 338, 74 U.S. 338, 19 L.Ed. 80; Converse v. United States, 1858, 21 How. 463, 62 U.S. 463, 16 L.Ed. 192; Hoyt v. United States, 1850, 10 How. 109, 51 U. S. 109, 13 L.Ed. 348; United States v. Brown, 1850, 9 How. 487, 50 U.S. 487, 13 L.Ed. 228; United States v. Buchanan, 1850, 8 How. 83, 49 U.S. 83, 12 L.Ed. 997; Gratiot v. United States, 1846, 4 How. 80, 45 U.S. 80, 11 L.Ed. 884; Goode v. United States, 1890, 25 Ct.Cl. 261.

[3] In United States v. Saunders, 120 U. S. 126, at pages 129, 130, 7 S.Ct. 467, at pages 468, 469, 30 L.Ed. 594, the Court said:

"* * * We are of opinion that, taking these sections [R.S. § 1763, 5 U.S.C. A. § 58; R.S. §§ 1764 and 1765, 5 U.S. C.A. §§ 69 and 70] all together, the purpose of this legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise, which is intended to cover all the services which, as such officer, he may be called upon to render, from receiving extra compensation, additional allowances, or pay for other services which may be required of him either by act of Congress or by order of the head of his department, or in any other mode, added to or connected with the regular duties of the place which he holds; but that they have no application to the case of two distinct offices, places, or employments, each of which has its own duties and its own compensation, which offices may both be held by one person at the same time. In the latter case, he is in the eye of the law, two officers, or holds two places or appointments, the functions of which are separate and distinct, and, according to all the decisions, he is in such case entitled to recover the two compensations. In the former case, he performs the added duties under his appointment to a single place, and the statute has provided that he shall receive no additional compensation for that class of duties unless it is so provided by special legislation. The case of United States v. Brindle, 110 U.S. 688, 4 S.Ct. 180 [28 L. Ed. 286], in which an Indian agent received large additional compensation for services connected with the sale of lands belonging to the Indians of his agency, which was affirmed in this court, was upon the ground that these additional services were performed for the benefit of the Indians, and the statute implied the payment of a reasonable compensation for such services. See also Converse v. The United States, 21 How. 463 [16 L.Ed. 192]."

Ward does not contend that he filled two positions at the same time while he was in the Navy. He asserts that he performed no services as yeoman after his assignment to the duties of title attorney, and that this amounted virtually to a discharge as yeoman and re-employment as title attorney. He argues that, since he would have been entitled to compensation for each position if he had occupied and performed the duties of both, he was clearly entitled to the pay of the position which he did fill. He asserts that the fact that no compensation had been fixed by law for the position of title attorney is not controlling, since the Navy was authorized to secure, and to pay for, such services.[4]

Ward points out that in the case of United States v. Brindle, supra [110 U.S. 688, 4 S.Ct. 180, 28 L.Ed. 286], no specific compensation was fixed by an act of Congress for the services rendered by Brindle in the sale of Indian lands, but that the court held that he was entitled to reasonable compensation for the services which he rendered in that regard. Page 694 of 110 U.S., page 183 of 4 S.Ct. If one accepts Ward's assertions that he ceased to be a yeoman and became a title attorney, that the duties of title attorney and the duties of a yeoman were completely unrelated and unconnected, that each place or position has its compensation fixed by law, and that Congress has made the necessary appropriations, then his argument that his claim is not barred by the statutes upon which the government relies seems unanswerable.

We think, however, that in order to bring himself within the rule of the cases upon which he relies, Ward has been obliged to distort the factual picture. He enlisted in the Navy in time of war. His rating fixed his status and his pay. He was directed by his superior officers to perform the duties of a title attorney. He was not separated from his rating as a yeoman. He was a yeoman doing the work of a title attorney because he was ordered to do so. Assuming that the Navy Regulations do not authorize ordering a yeoman to perform the duties of a title attorney, the fact remains that Ward did furnish these services in compliance with the orders of his superior officers and not in reliance upon any contract, express or implied. While Ward insists that the legal services which he rendered had no relation to the duties of a yeoman, it is our opinion that, under the facts, these services are to be regarded as having been added, by superior authority, to his regular duties.

But if recovery by Ward is not barred by statute, we are still of the opinion that he has no enforceable claim against the United States—this, because the performance by Ward of the services of a title attorney, under the direction of his superior officers, negatives the existence of a promise on the part of the government to pay him the reasonable value of such services. "* * * a promise to pay for services can only be implied when the court can see that they were rendered in such circum-

---

4 Ward relies upon the following provision in § 520 of Title 34 U.S.C.A.:

"The head or other authorized officer of any department, independent establishment, or agency, shall procure any evidence of title which the Attorney General may deem necessary, and the expenses of procurement, except where otherwise authorized by law or provided by contract, may be paid out of the appropriations for the acquisition of land or out of the appropriations made for the contingencies of the acquiring department, independent establishment, or agency."

A similar provision was invoked in the case of United States v. Johnson, 173 U.S. 363, 19 S.Ct. 427, 43 L.Ed. 731, in which a United States District Attorney was claiming additional compensation for services rendered the War Department in condemnation proceedings. In that case it was ruled that the attorney was performing a duty of his office and therefore was not entitled to such compensation. The Court said, page 375 of 173 U.S., page 431 of 19 S.Ct., 43 L.Ed. 731:

"* * * If such was his duty as defined by law, then he is forbidden by statute from receiving any special compensation on account of such services; this, for the reason that no appropriation for such compensation has been made by any statute explicitly stating that it was for such additional pay, extra allowance, or compensation. Rev.St., §§ 1764, 1765. On the other hand, if his duties as District Attorney did not embrace such services as he rendered, and for which he here claims special compensation, then he is entitled to be paid therefor without reference to the regular salary, pay, or emoluments attached to his office."

stances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited." Coleman v. United States, 152 U.S. 96, 99, 14 S.Ct. 473, 474, 38 L.Ed. 368. See, also, Harley v. United States, 198 U.S. 229, 234. 25 S.Ct. 634, 49 L.Ed. 1029. An implied contract is an actual agreement, circumstantially proved. The facts relied upon to establish the agreement will not suffice if entirely consistent with the hypothesis that no such agreement existed. That is the situation here. Ward's efforts to get additional compensation or to be reassigned to his original duties while still in the Navy indicate that he did not expect additional pay unless he was able to secure some change in his status.

Our conclusion is that the judgment appealed from must be affirmed.

Affirmed.