Kay ADAMS, Jr., et al., Petitioners-Plaintiffs,

v.

Honorable Clark CLIFFORD, Secretary of Defense, Honorable Stanley R. Resor, Secretary of the Army, General Harold K. Johnson, Chief of Staff of the U. S. Army, Brigadier General F. A. Schaefer, III, Commanding Officer, 29th Infantry Brigade, Schofield Barracks, Oahu, and United States of America, Respondents-Defendants.

Civ. No. 2878.

United States District Court
D. Hawaii.

Jan. 7, 1969.

Daral G. Conklin, Honolulu, Hawaii, for petitioners-plaintiffs.

Yoshimi Hayashi, U. S. Atty., District of Hawaii, Joseph M. Gedan, Asst. U. S. Atty., Honolulu, Hawaii, for respondents-defendants.

## DECISION

PENCE, Chief Judge.

This action was brought by 283 members of the United States Army Reserve who had enlisted therein prior to October 1966, and who, in April–May 1968, were ordered and entered into active duty. All are now in the 29th Infantry Brigade, United States Army, and stationed in Hawaii, allegedly against their will and without their consent. The named defendants are the Honorable Clark Clifford, Secretary of Defense, and other Secretaries, Generals, commanding officers, etc., and the United States.

Upon enlistment, each plaintiff signed an enlistment contract entitled "Reserve Component Service Agreement" [1] which set forth various requirements and duties the enlistee was to fulfill but which contained no explicit provision as to the circumstances under which the Ready Reserve could be called to active duty. Plaintiffs maintain that at the time they were ordered and entered into active duty, no war nor national emergency had been declared by Congress, nor had the President declared that a national emergency existed, and that therefore their orders to active duty were in violation of the contracts between the plaintiffs and the United States. Petitioners in their last amended complaint urge that the enlistment contracts were entered into pursuant to Title 10 United States Code §§ 262, 263, 672, and 673; [2]

1. Other than for training purposes, the only references therein to active duty are:

   "I incur a military service obligation of 6 years.

   \* \* \*

   "After completing the *30* weeks training I will serve in the Ready Reserve for the remainder of my 6 year military service obligation.

2. Section 262: "The purpose of the reserve components is to provide trained units \* \* \* available for active duty in the armed forces, in time of war or national emergency and at such other times as the national security requires \* \* \*."

   Section 263: "Whenever Congress determines that more units \* \* \* are needed for the national security than are in the regular components of the ground and air forces, \* \* \* units of \* \* \* reserve components necessary for a balanced force, shall be ordered to active duty and retained as long as so needed."

   Section 672: "In time of war or of national emergency declared by Congress, *or when authorized by law*, \* \* \* the Secretary \* \* \* may, without the consent of the persons affected, order any unit, and any member not assigned to a unit organized to serve as a unit, of a reserve component \* \* \* to active duty \* \* \* for the duration of the war or emergency and for six months thereafter." (Emphasis added.)

   Section 673: "In time of national emergency declared by the President after January 1, 1953, *or when otherwise* authorized by law, \* \* \* the Secretary \* \* \* may, without the consent of the persons concerned, order any unit, and any member not assigned to a unit organized to serve as a unit, in the Ready Reserve under the jurisdiction of that Secretary to active duty \* \* \* for not more than 24 consecutive months." (Emphasis added.)

that Public Law 89–687 [3] was passed by Congress subsequent to their enlistment; that the defendants' order that plaintiffs should enter into "involuntary active duty" is void and invalid as being retroactive and depriving each plaintiff "of his valuable contract rights under his said enlistment contract;[4] that the issuance of the unlawful orders breached each enlistment contract, and prevented each enlistee "from transacting * * * [his] business and [each has] suffered great financial loss"[5] in a sum of less than $10,000, and asked compensatory damages therefore.

The defendants moved to dismiss on the ground that plaintiffs failed to state a claim upon which relief can be granted, maintaining the provisions of 10 U.S.C. §§ 262, 263, 672 and 673 were incorporated into plaintiffs[1] enlistment contracts, that since Public Law 89–687 implemented and is in furtherance of the above sections, it did not violate the enlistment contracts, and when the plaintiffs were ordered to active duty pursuant to subsection (e) of section 101 of Public Law 89–687, the enlistment contracts were not breached.

Plaintiffs maintain that the government is bound upon each initial enlistment contract in the same manner as a private citizen; that the only contracts executed by the plaintiffs were based upon the law as it stood before enactment of Public Law 89–687; and that when the President chose to exercise his power under that law to call the Reservists into active duty, the use of that power breached the contract between the Government and the several reservists and that compensation is due each Reservist for such breach.

■ The basic contention of plaintiffs is that the enlistment contract is to be treated in precisely the same manner as if it were a contract between two private citizens, and in support of that proposition cites United States v. 85.11 Acres of Land, 243 F.Supp. 423 (N.D. Okl.1965). Unfortunately plaintiffs' contention is not the law. While Bell v. United States, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1960), also cited by the plaintiffs, does state (at 402, 81 S.Ct. at 1235) that " 'enlistment is a contract", that phrase is followed by a significant reservation: "[B]ut it is one of those contracts which changes the status * * *. By enlistment the citizen becomes a soldier. His relations to the State and the public are changed. He acquires a new status, with correlative rights and duties * * *.' ", citing In re Grimley, 137 U.S. 147, 151–152, 11 S.Ct. 54, 34 L.Ed. 636. Grimley was 40 years of age at the time he enlisted, although he represented himself to be 28; and under section 1116 of the Revised Statutes (1890) recruits enlisting in the Army were not to be over 35 years at the time of their enlistment. Sometime after enlistment, Grimley was found guilty of desertion and sentenced to six months imprisonment. From that sentence he sued out a writ of habeas corpus and pled his "age disability" as making the contract of enlistment void. The court stated:

"But in this transaction something more is involved than the making of a contract, whose breach exposes to an action for damages. Enlistment is a contract; but it is one of those contracts which changes the status; and where that is changed, no breach of the contract destroys the new status or relieves from the obligations which its existence imposes. * * *

"By enlistment the citizen becomes a soldier. His relations to the State and the public are changed. He acquires a new status, with correlative rights and duties * * *. The

---

3. Public Law 89–687, § 101(e): "Notwithstanding any other provision of law, until June 30, 1968 the President may, when he deems it necessary, order to active duty any unit of the Ready Reserve of an armed force for a period not to exceed twenty-four months."

4. Plaintiffs' Complaint, p. 4.

5. Plaintiffs' Complaint, p. 5.

government has the right to the military service of all its able-bodied citizens; and may, when emergency arises, justly exact that service from all. * * *" 137 U.S. at 151, 152, 153, 11 S.Ct. at 55.

In fully reviewing the historical background of this change of status resulting from enlistment, the Court in Tyler v. Pomeroy, 8 Allen 480 (Mass.1864) observed:

"The government thus appeals directly to the patriotism of the people, relying upon the fundamental principle of society, the mutual obligation of protection and support, which is expressed in the simplest words and the closest connection in our own Declaration of Rights. 'Each individual of the society has a right to be protected by it in the enjoyment of life, liberty and property, according to standing laws. He is obliged, consequently, to contribute his share to the expense of this protection; to give his personal service, or an equivalent, when necessary.' Declaration of Rights, art. 10." Tyler, supra, at 495.

In determining the meaning of "enlist" and "enlistment", i. e., whether Tyler had actually become a soldier by virtue of signing an enlistment paper but without thereafter going to the military camp, the Massachusetts Supreme Court said:

"The question before us is no ordinary one of the force, construction or validity of a contract—whether the plaintiff has made an agreement and broken it, and is liable in damages for the breach; but of a change of status— whether by signing a particular paper, or by any other act, the plaintiff has changed his condition, given up some of the rights of a private citizen, and become amenable to military discipline * * *." Tyler, supra, at 485–486.

All the powers of war and peace, including the power to raise, support and regulate armies have been granted by the Constitution to the national government.[6]

"In addition to the power to raise, support and regulate armies congress is vested by the Constitution with authority to provide for organizing, arming and disciplining the militia, for calling them into the service of the United States to execute the laws of the Union, * * * and for governing them when employed in the national service. Under this power to organize, congress has the exclusive power of determining who shall constitute the militia; and all persons coming within the class defined by congress are members of the militia, without any act of their own." Tyler, supra, at 493.

■ The plaintiffs, being members of the Ready Reserve, were, prior to activation, members of the militia. As indicated above, Congress has the power as an attribute of sovereignty to enact laws which in their effect may alter existing military contracts such as we are herewith concerned. Cf. also City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965).

■■ Plaintiffs here entered into no ordinary contract with their government; each and every one of them by his enlistment in the Reserve changed his status, gave up some of the rights of a private citizen and became amenable to the laws applicable to the military. As is shown by Bell v. United States, supra, and the converse situation in Ward v. United States, 158 F.2d 499 (8 Cir. 1946), the rules applicable to ordinary contracts do not ipso facto apply to those in the military service. It has been uniformly held that Public Law 89–687 is precisely a "status" law which was contemplated both by the language, "when otherwise authorized by law" appearing in 10 U.S.C. §§ 672, 673, and by the congressional purpose and policy expressed in 10 U.S.C. §§ 262, 263.[7] Therefore Public Law 89–687 ap-

---

6. U. S. Constitution, Article I, Section 8.

7. See n. 3, supra.

plied to those who were already enlisted in the Reserve Corps at the time the law went into effect. See Morse v. Boswell (D.C.Md.), 289 F.Supp. 812, affirmed 401 F.2d 544 (4 Cir. 1968).

As was held in Winters v. United States, 281 F.Supp. 289, 295 (E.D.N.Y. 1968), affirmed per curiam 390 F.2d 879, certain provisions of the Winters enlistment contract in the Marine Corps Ready Reserve were affected by Public Law 89-687 so that the "nature of the exposure of the enlisted man to activation for regular duty in the Armed Forces" was altered. The court continued:

> "Both the enlistment contract and the Statement of Understanding contemplate that the obligations which the enlisted man undertakes include * * additional active duty 'otherwise prescribed by law' or 'as the law may require.' Neither the enlistment contract nor the Statement of Understanding says in so many words that it means duty prescribed by law whether already enacted or hereafter passed, but that is the evident and necessary meaning of any language so used in such instruments." 281 F. Supp. at 295-296.

Here, just as is found in the Memorandum Opinion of Doyle, J., Civil No. C-824 (D.Colo. July 17, 1968), plaintiff's change of status from a civilian to a soldier does not invalidate the contractual obligations of either party. "The language of P.L. 89-687 makes clear that the statute was not intended to apply only to persons enlisting after its enactment. * * * [I]t was intended to apply to persons already in the reserve, thus making a pool of * * enlisted men subject to activation. * * The language of the statute applies to all reserve units. * * *" (Memorandum Opinion, supra, p. 559.)

■ The power to call plaintiffs, as Reservists, to active duty was a valid one and the exercise of that power by the President, *per se*, did not breach any of the enlistment contracts. Public Law 89-687 was but another manifestation of the power constitutionally given Congress "to make all Laws which shall be necessary and proper for carrying into Execution" its power to "make Rules for the Government and Regulation of the land and naval Forces * * and for governing such Part * * * [of the Militia] as may be employed in the Service of the United States * * *." 8

The motion to dismiss is granted.