No. 30,247.

BUTLER BROTHERS, *Appellee,* v. P. E. TWINEHAM, *Appellant.*

(7 P. 2d 531.)

548

Opinion filed January 30, 1932.

*Melvin E. Buck,* of Kansas City, for the appellant.

*H. S. Roberts,* of Kansas City, *Thomas H. Edwards* and *A. L. Quant,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action involves the liability of a surety who signed an appeal bond for a party who later became a bankrupt. The surety was held liable notwithstanding the principal debtor who took the appeal was adjudged to be released from the debt in the bankruptcy proceeding, but the surety was held liable on the bond. An appeal was taken from the judgment.

It appears that P. E. Twineham was indebted to Butler Brothers in the sum of $272.11, and that a judgment was rendered against him on March 29, 1929, in the city court of Kansas City. Twineham took an appeal to the district court on June 1, 1929, and filed an appeal bond, which was signed by Melvin E. Buck as surety. The bond was in the usual form and recited that the signers—

"Bind ourselves to said plaintiff, in the sum of $550, that said defendant shall prosecute his appeal to effect and without unnecessary delay, and satisfy such judgment and costs as may be rendered against him therein."

After the appeal from the city court Twineham filed a bill of particulars in the district court and alleged that since the appeal was taken he had become a voluntary bankrupt; that on the 20th day of October the United States district court adjudged that Twineham had complied with all the requirements of the act of congress relating to bankruptcy and was entitled to a discharge from all debts and obligations for which he was liable up to October 11, 1929, other than those which are excepted in the bankruptcy act, and an order of discharge was issued to the bankrupt. These matters were produced in evidence in the appeal of Twineham to the district court where judgment was rendered against him in favor of Butler Brothers, the judgment rendered being to the effect that plaintiff was entitled to a judgment for $290.30, but that by reason of the discharge in bankruptcy, the execution of the judgment was perpetually stayed as to him, thus giving Twineham the benefit of his discharge, and holding the surety liable on the appeal bond.

Whether the court had authority to thus release the bankrupt by a perpetual stay of execution and hold the surety liable on the ap-

peal bond is the question submitted to this court. It is conceded that the discharge in bankruptcy effectually releases Twineham from all his provable debts other than those excepted by the bankruptcy act not here material, including that to the Butler Brothers. But does it release the surety on the appeal bond, given by the bankrupt prior to the discharge of the bankrupt who, it is argued, stands in the attitude of a codebtor and is not affected by the discharge granted to Twineham?

On one side it is contended the discharge in bankruptcy extinguishes the debt, and on the other that it merely creates a bar against the enforcement of collection of the debt of the bankrupt. In some decisions of this court language was used to the effect that the discharge canceled or extinguished the debt (*Needham v. Matthewson*, 81 Kan. 340, 105 Pac. 436; *Robinson v. Jacobia*, 115 Kan. 36, 221 Pac. 1113), but the terms were not used on a question such as arises here; that is, whether the discharge operated as a bar to the creditors' remedy for the enforcement of the debt against the bankrupt, or whether it cancels the debt for all purposes and is the equivalent of payment. In the Needham case the court recognized that a moral obligation remained after the discharge sufficient to constitute a consideration for a new promise to pay the released debt. The Robinson case likewise held that the original debt of the bankrupt which operated to release him from liability was sufficient consideration for the new promise to pay the debt and to revive the debt and make it an enforceable obligation of the promisor. In the later case of *Hart v. Gooding*, 122 Kan. 62, 250 Pac. 1069, it was decided that a debt barred by a discharge in bankruptcy is of itself a good consideration for a new promise. That the promise need not be in writing or in any set form of words, but that it should be a clear and unequivocal promise to pay the specific debt. If the debt had been actually extinguished as, for instance, by payment, it could not constitute a consideration for a new promise. In *Bracewell v. Hughes*, (Ia.) 235 N.W. 37, the matter of extinguishment of a debt by a discharge in bankruptcy was considered, and it was there said:

"The authorities are agreed that bankruptcy does not pay a debt. It merely creates a bar to its collection by judgment. The debt may be revived by a new promise. In other words, there is a distinction between a debt discharged and one paid. (*Stanek v. White*, 172 Minn. 390, 215 N. W. 784; Gilbert's Collier on Bankruptcy [1927] 413; *Badger v. Gilmore*, 33 N. H. 361, 66 Am. Dec. 729; *Citizen's Loan Ass'n v. Boston & M. R. R.*, 196 Mass. 528, 82 N. E. 696, 14 L. R. A., n.s., 1025, 124 Am. St. Rep. 584, 13 Ann. Cas. 365; *In re*

*Estate of Fussell,* 129 Ia. 498, 105 N. W. 503.) We have then in this case an unsatisfied debt. Its collection out of the general assets of the bankrupt is barred, and manifestly, were it not an antecedent debt, its collection out of the homestead would be barred." (p. 41.)

In *Federal National Bank v. Koppel,* 253 Mass. 157, it was held:

"A discharge in bankruptcy does not extinguish the debt. It affords to the debtor a complete legal defense to an action on such debt if he chooses to avail himself of it. The remedy for the collection of the debt, but not its existence, is affected. (*Citizen's Loan Ass'n v. Boston & M. R. Co.,* 196 Mass. 528 [14 L. R. A., n. s., 1025, 124 Am. St. Rep. 584, 82 N. E. 696, 13 Ann. Cas. 365]; *Sibley v. Nason,* 196 Mass. 125, 131 [12 L. R. A., n. s., 1173, 124 Am. St. Rep. 520, 81 N. E. 887, 12 Ann. Cas. 938].)" (p. 158.)

In *Zavelo v. Reeves,* 227 U. S. 625, 57 L. Ed. 676, that court had before it the question, and said:

"It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in the bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt. And in reason, as well as by the greater weight of authority, the date of the new promise is immaterial. The theory is that the discharge destroys the remedy, but not the indebtedness; that, generally speaking, it relates to the inception of the proceedings, and the transfer of the bankrupt's estate for the benefit of creditors takes effect as of the same time, . . ." (p. 629.)

Inasmuch as the debt is not destroyed, and the remedy releasing him from liability on the debts by a perpetual order of stay, we see no reason why the surety who was in fact a codebtor should be released. The effect of a discharge is personal to the bankrupt. (*De Walt v. Heeren,* 50 N. D. 804; *Folger v. United States,* 103 U. S. 30.) The surety has not been discharged from his debts in a bankruptcy proceeding, nor from his obligation in the bond given, and that obligation is a severable one. As the debt has not been paid and still exists for some purposes, he cannot escape liability on his express promise. The purpose of a bankruptcy proceeding to release the bankrupt from his debts has been fully carried out by the special judgment that was rendered, and the remedy and protection provided for in the bankruptcy act have been adjudged to him. There is some conflict in the authorities on the questions involved, but we think the better rule is that the sureties on the obligation are liable notwithstanding the discharge of the bankrupt. In *Hill v. Harding,* 130 U. S. 699, 32 L. Ed. 1083, a creditor brought an action against a debtor and procured an attachment against the property of the debtor. The latter secured a dissolution of the attachment by giving

a bond signed by sureties promising to pay the amount of the judgment and costs that might be rendered in the action. After verdict and before the judgment against the debtor he was adjudged a bankrupt. Later the state court rendered a special judgment against the bankrupt and his sureties by providing that a perpetual stay of execution against the judgment be granted to the bankrupt and permitting the creditor to proceed against the sureties. It was held that the special judgment was not one against the person or property of the bankrupt and had no other effect than to enable the creditor to charge the sureties in accordance with the terms of the contract they had made. The court also stated that the judgment was within the spirit of the bankruptcy act, which declares that, "No discharge shall release, discharge or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise." The court held that there was nothing in the bankruptcy act to prevent the state court from rendering a judgment against the bankrupt, notwithstanding his discharge, for the purpose of enabling the creditors to proceed against the sureties in the bond they had made. (See, also, *Wind Engine & P. Co. v. Iron Co.*, 227 Pa. St. 262; *Kendrick & Roberts v. Warren Bros.*, 110 Md. 47; *Sprague, Warner & Co. v. Fisher*, 199 Mich. 601; *Brown & Brown Coal Co. v. Antezak*, 164 Mich. 110; *Dunham Bros. Co. v. Colp*, 125 Me. 211.)

We think these authorities state the better rule, and following them we hold that it was within the power of the court to render the special judgment that was entered, and it is therefore affirmed.