BADEAU *v.* UNITED STATES.

UNITED STATES *v.* BADEAU.

APPEALS FROM THE COURT OF CLAIMS.

Nos. 659, 749. Submitted January 4, 1889. — Decided April 15, 1889.

A retired army officer, accepting pay under an appointment in the diplomatic or consular service, is thereby precluded from receiving salary as an officer in the army.

Whether a retired army officer, whose name is dropped from the rolls under the provisions of Rev. Stat. § 1223, in consequence of his accepting an appointment in the diplomatic or consular service of the government, can be restored to the army under the provisions of the act of March 3, 1875, 18 Stat. 512, is not decided in this case.

An officer whose name is placed on the retired list of the army by the Secretary of War, in apparent compliance with provisions of law, is an officer *de facto* if not *de jure*; and money paid to him as salary cannot be recovered back by the United States.

·THE case, as stated by the court in its opinion, was as follows:

On the 21st day of June, 1883, the Secretary of the Treasury, pursuant to § 1063 of the Revised Statutes, and in compliance with the certificate of the Second Comptroller of the Treasury, transmitted to the Court of Claims the claim of Adam Badeau for pay as an officer of the United States Army, "together with all the vouchers, papers, documents and proofs pertaining thereto, that the same might be proceeded in, in said court, as if originally commenced therein by the voluntary action of the claimant;" and thereafter upon the 19th day of February, 1884, the claimant filed his petition in which, after making certain averments, and stating that he was secretary of legation at London from May 19 to December 6, 1869, and consul-general at London, April 28, 1870, to September 16, 1881, and at Havana, Cuba, from November 25, 1882, to the date of the filing of the petition, and that he had received pay as a military officer from December 6, 1869, to April 30, 1870, and from September 16, 1881, to November 25, 1882, he claimed to be entitled to "the amount of pay and allowances of a captain, mounted, retired from active service, for the period from April 28, 1870, to September 16, 1881, and from November 25, 1882, up to the present time, amounting to the sum of eighteen thousand eight hundred and fifty-two dollars and sixty-five cents, not having received such pay or allowances during said period; also, to the additional pay and allowance provided by § 1262 of the Revised Statutes, which section is as follows:

" There shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains and others having assimilated rank or pay, ten per centum of their current yearly pay for each term of five years of service."

A general traverse was filed by the United States, March 8, 1884, and on the 10th of February, 1885, a counter-claim, stating " that Adam Badeau, the claimant in the above entitled cause, before and at the time of the commencement of this suit was, and still is, indebted to the said defendants in a large sum of money, to wit, two thousand five hundred and sixty dollars

Statement of the Case.

and ten cents, ($2560.10,) for money erroneously paid to said Badeau without authority of law, the same being on account of payments of salary made to him as an army officer, (captain, retired,) from December 31, 1869, to October 31, 1882, during all of which time said Badeau was not in fact in the army nor an officer thereof;" to which the claimant filed a replication March 9, 1885.

The United States also pleaded the statute of limitations to the larger part of petitioner's claim.

Findings of fact and conclusions of law were announced by the Court of Claims, May 9, 1887, as follows:

I. On the 21st April, 1869, the claimant, then being a first lieutenant of infantry in the army of the United States, unassigned, was appointed by the President assistant secretary of legation at London. On the 19th May, 1869, he accepted the appointment, filed in the Department of State his oath of office, and embarked for his post, reaching England May 31st, 1869.

II. On the 15th May, 1869, a military board was convened by the following order:

[Special Orders, No. 116. — Extract.]

HEADQUARTERS OF THE ARMY,

ADJUTANT GEN'L'S OFFICE,

WASHINGTON, *May* 15, 1869.

12. By direction of the President, a board of officers will assemble in New York City at 12 M. on the 18th inst., or as soon thereafter as practicable, for the examination of Bvt. Brig. General Adam Badeau, 1st lieutenant U. S. Army, for retirement, in pursuance of the act of Congress of the 3d of August, 1861. . . .

Upon completion of the examination of General Badeau the president of the board will dissolve the board and order the officers composing the same to resume their proper duties.

\*          \*          \*          \*          \*.

By command of Gen'l Sherman.          E. D. TOWNSEND,
                                        *Adjutant General.*

The board met in New York on the 18th May, 1869, and the following proceedings took place:

NEW YORK, *May* 18*th*, 12 M.

The board met pursuant to above order. Owing to the illness and consequent absence of Gen'l Reeve the board adjourned..

NEW YORK, *May* 18*th*, 4 P.M.

The following telegram was received:

WASHINGTON, D. C., *May* 18*th*.

General McDOWELL, *New York City*:

By direction of the Secretary of War, General Rufus Ingalls is detailed as a member of the retiring board, vice Reeve.

Acknowledge receipt.

E. D. TOWNSEND,
*Adjutant General.*

On receipt of the above telegraphic order the board reconvened.

Present all the members and the recorder.

The board proceeded to consider the case of 1st Lieut. Adam Badeau, bvt. brig. gen'l U. S. A., who appeared before the board, and having heard the orders convening it read, was asked if he objected to any member named in the orders. He having no objection, the board was duly sworn in his presence by the recorder, and the recorder by the president. . . . The board was cleared, and after mature deliberation find "that 1st Lieutenant Adam Badeau, U. S. Infantry, bvt. brig. general U. S. A., is incapacitated for active service, and that said incapacity is due to a wound received in the foot whilst on duty as captain and additional aide-de-camp to Brig. Gen'l T. W. Sherman in the assault on Port Hudson in May, 1863."

IRWIN McDOWELL,
*Bvt. Maj. Gen'l, Pres'd't Board.*

H. STOCKTON,
*1st Lieut. Ord., Bvt. Capt., A. D. C. Recorder of Board.*

On the 22d May, 1869, this was approved by the Secretary of War, and on the 25th May the President made the following order:

[Special Orders, No. 126 — Extract.]
HEADQUARTERS OF THE ARMY,
ADJUTANT GENERAL'S OFFICE.
WASHINGTON, *May* 25, 1869.

\*          \*          \*          \*          \*

12. Brevet Brigadier General Adam Badeau, 1st lieutenant U. S. Army, having, at his own request, been ordered before a board of examination, and having been found "incapacitated for active service, and that said incapacity is due to a wound received in the foot whilst on duty as captain and additional aide-de-camp to Brigadier General T. W. Sherman in the assault on Port Hudson in May, 1863," the President directs that his name be placed upon the list of retired officers of that class in which the disability results from long and faithful service, or from some injury incident thereto, in accordance with §§ 16 and 17 of the act approved August 3, 1861. In accordance with § 32 of the act approved July 28, 1866, General Badeau is, by direction of the President, retired with the full rank of captain, to date from May 18, 1869.

\*          \*          \*          \*          \*

By command of General Sherman.          E. D. TOWNSEND,
*Adjutant General.*

III. The claimant held the office of assistant secretary of legation, and received the salary thereof, until the 6th December, 1869, when he resigned. By order of the President December 23, 1869, he was "assigned to duty in the city of Washington" as an officer of the army, it being stated that the order was to date from December 6, 1869. He drew from the pay department of the army the pay of an active captain for the period from December 6, 1869, to February 21, 1870, and the pay of a retired captain from February 21, 1870, to April 30, 1870, the pay so drawn amounting to $621.84. He was appointed consul general at London, England, April 28,

1870, and was in the consular service of the government until the commencement of this suit, except for a period of about fourteen months, beginning in September, 1881, and ending in November, 1882.

IV. From May, 1869, until May, 1878, the claimant was borne upon the retired list of the army as having been retired with the rank of captain on the 18th May, 1869. On the 7th May, 1878, the following order was issued:

[General Orders, No. 20.]

HEADQUARTERS OF THE ARMY,
ADJUTANT GENERAL'S OFFICE,
WASHINGTON, *May* 7, 1878.

The following are announced:

*Dropped.*

\*　　　\*　　　\*　　　\*　　　\*

In conformity with § 1223 Revised Statutes, and opinion of Attorney General dated December 11, 1877. (1) Captain Adam Badeau, U. S. Army, retired, to date from May 19, 1869.

\*　　　\*　　　\*　　　\*　　　\*

By command of General Sherman.　　E. D. TOWNSEND,
*Adjutant General.*

The claimant thereupon applied to have the above order revoked upon the ground that he was disabled within the intent of the act 3d March, 1875, and he produced and filed the following certificate:

BANGOR, MAINE, *Feb.* 20, 1878.

I, Eugene F. Sanger, physician and surgeon, certify that I was medical director of the 2d division, 19th Army Corps, before Port Hudson, May 27, 1863, and that Captain Adam Badeau, A. D. C. on Brig. Gen'l T. W. Sherman's staff, received a bullet wound penetrating the instep of the left foot, and making its exit below the internal malleolus. I resected

the 2d cuniform bone, parts of the 1st and 3d cuniform, and the proximal end of the 2d metatarsal bone, on acc't of which resection he was sent to the rear at New Orleans.

Respectfully, your ob't servant,

EUGENE F. SANGER,

*Brevet Lt. Col. and late Brigade Surgeon, late Medical Director, 19th Army Corps, now Examining Surgeon Pension Bureau.*

The foregoing surgeon's certificate was duly referred to the Surgeon General of the army. The order of reference and the Surgeon General's report thereon were as follows:

WAR DEPARTMENT, ADJUTANT GENERAL'S OFFICE,

WASHINGTON, *March* 4, 1878.

Respectfully referred to the Surgeon General, U. S. Army, for his opinion as to whether the disability of Captain Badeau, for which he was retired, can be regarded as bringing him within that class of officers specified in the proviso of § 2, act of March 3, 1875, (G. O. 16 of 1875,) who have " an arm or leg permanently disabled by reason of resection on account of wounds."

The proceedings of the Retiring Board in Captain Badeau's case and other papers are enclosed herewith.

By order of the Secretary of War. E. D. TOWNSEND,

*Adjutant General.*

SURGEON GENERAL'S OFFICE,

*March* 6, 1878.

Respectfully returned to the Adjutant General of the army with opinion that the evidence submitted is sufficient to establish that Captain Badeau's case comes properly within that class of officers specified by § 2, act of March 3, 1875, as one in which an arm or leg is permanently disabled by reason of resection on account of wounds.

J. W. BARNES,

*Surgeon General.*

Whereupon the Secretary of War, on the 3d July, 1878, made the following order, under which the claimant was borne on the retired list of the army up to the time of his bringing this action:

WAR DEPARTMENT, *July* 3, 1878.

Respectfully returned to the Adjutant General of the army.

The former decision in Captain Badeau's case was correct, as the record then stood, but it now appearing that his case comes clearly within the provisions of the proviso to § 2, act of March 3, 1875, his name will be restored to the retired list.

GEORGE W. McCRARY,
*Secretary of War.*

V. From the 18th May, 1869, to the 6th December, 1869, the claimant received no pay as a military officer, nor has he received military pay at any time while holding a diplomatic or consular office.

From the 6th December, 1869, to the 21st February, 1870, while assigned to duty in the city of Washington as a retired officer under the act 21st January, 1870, (16 Stat. 22,) the claimant was paid as a captain in active service the sum of $396.92, during which period he was rendering service as an officer.

From the 21st of February, 1870, to the 31st October, 1882, the claimant was paid as an officer on the retired list, for periods when he was not holding a diplomatic or consular office, the sum of $2163.18.

There has been withheld from the claimant while not holding a diplomatic or consular office his pay as a retired officer from November 1, 1882, to November 25, 1882, amounting to $

There has been withheld from the claimant while holding a diplomatic or consular office between the 19th May, 1869, and the 19th February, 1884, when this action was brought, his pay as a retired officer, amounting to the sum of $

VI. The claimant was beyond the seas at the times when the foregoing claims accrued, and his petition was filed in this court within three years after the disability had ceased.

CONCLUSIONS OF LAW.

The court being equally divided upon the foregoing findings as to the claimant's right to recover, does, for the purposes of an appeal, frame the following conclusions of law:

The petition of the claimant and the counter-claim of the defendants should both be dismissed.

Thereupon judgment was entered dismissing the petition of the claimant and the counter-claim of the United States. Appeals were prosecuted by both parties to this court, and the records filed herein August 10 and October 5, 1887.

On the 5th of October, 1888, a stipulation was filed, adding to the record certain conclusions and order of the Court of Claims and certain matters introduced in evidence, at a stage of the case prior to the final findings.

*Mr. Daniel P. Hays* for Badeau.

*Mr. Assistant Attorney General Howard* and *Mr. F. P. Dewees* for the United States.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Section 2 of the act of March 30, 1868, entitled "An act making appropriations for the consular and diplomatic expenses of the government for the year ending thirtieth June, 1869, and for other purposes," (15 Stat. 56, 58,) is as follows: "That any officer of the Army or Navy of the United States who shall, after the passage of this act, accept or hold any appointment in the diplomatic or consular service of the government, shall be considered as having resigned his said office, and the place held by him in the military or naval service shall be deemed and taken to be vacant, and shall be filled in the same manner as if the said officer had resigned the same." This was carried into the Revised Statutes (1874) as § 1223.

By § 18, c. 42, act of August 3, 1861, (12 Stat. 290,) it was provided "that the officers partially retired shall be entitled to wear the uniform of their respective grades, shall continue

to be borne upon the Army Register or Navy Register, as the case may be, and shall be subject to the rules and articles of war, and to trial by general court-martial for any breach of the said articles." And this was re-enacted as § 1256 of the Revised Statutes.

By § 16 of the said act of August 3, 1861, it was provided "that there shall not be on the retired list at any one time more than seven per centum of the whole number of the officers of the Army as fixed by law," while by § 5 of the act of July 15, 1870 (16 Stat. 317), "the number of officers who may be retired in accordance with existing laws shall be in the discretion of the President: *Provided*, That the whole number on the retired list shall at no time exceed three hundred;" and this reappears as § 1258 of the Revised Statutes.

By § 23 of the act of July 15, 1870 (16 Stat. 320) "any retired officer may, on his own application, be detailed to serve as professor in any college," and such is § 1260 of the Revised Statutes.

By the first section of "An act relating to retired officers of the Army," approved January 21, 1870, (16 Stat. 62,) it was provided "that no retired officer of the Army shall hereafter be assigned to duty of any kind, or be entitled to receive more than the pay and allowances provided by law for retired officers of his grade; and all such assignments heretofore made shall terminate within thirty days from the passage of this act;" but by resolution of April 6, 1870 (16 Stat. 372) the law of January 21st was limited so as not to apply "to officers selected by the Board of Commissioners of the Soldiers' Home, District of Columbia, for duty at that institution, such selection being approved by the Secretary of War," and this is reënacted in § 1259 of the Revised Statutes.

By § 18 of the act of July 15, 1870, already referred to, (16 Stat. 319,) it was enacted "that it should not be lawful for any officer of the Army of the United States on the active list to hold any civil office, whether by election or appointment, and any such officer accepting or exercising the functions of a civil office shall at once cease to be an officer of the Army, and his commission shall be vacated thereby," and this is carried into the Revised Statutes as § 1222.

Thus in the acts of 1868 and 1870, and in §§ 1222 and 1223 of the Revised Statutes, Congress distinguished, and adhered to the distinction, between officers on both lists and officers on the active list only, and between ordinary civil appointments and appointments in the diplomatic or consular service. No officer, whether on the active or retired list, could accept appointment in the latter, and remain an officer, but that rule was not applied to retired officers in the matter of holding a civil office.

The second section of the act of Congress of March 3, 1875, reads as follows:

"That all officers of the army who have been heretofore retired by reason of disability arising from wounds received in action shall be considered as retired upon the actual rank held by them, whether in the regular or volunteer service, at the time when such wound was received, and shall be borne on the retired list and receive pay hereafter accordingly; and this section shall be taken and construed to include those now borne on the retired list, placed upon it on account of wounds received in action: *Provided,* That no part of the foregoing act shall apply to those officers who had been in service as commissioned officers twenty-five years at the date of their retirement; nor to those retired officers who had lost an arm or leg, or has an arm or leg permanently disabled by reason of resection, on account of wounds, or both eyes by reason of wounds received in battle; and every such officer now borne on the retired list shall be continued thereon, notwithstanding the provisions of section two, chapter thirty-eight, act of March thirty, eighteen hundred and sixty-eight: *and be it also provided,* That no retired officer shall be affected by this act who has been retired or may hereafter be retired on the rank held by him at the time of his retirement; and that all acts or parts of acts inconsistent herewith be, and are hereby, repealed." 18 Stat. 512, c. 178.

By § 32 of the act of July 28, 1866, (14 Stat. 337,) it was provided "that officers of the regular Army entitled to be retired on account of disability occasioned by wounds received in battle, may be retired upon the full rank of the command

held by them, whether in the regular or volunteer service, at the time such wounds were received."

It was within. the power of Congress to change the rank here spoken of, and this it did by the act of 1875, which substitutes for " the full rank of the command held by them " 'the " actual rank held by them," and which embraces only " those now borne on the retired list, placed upon it on account of wounds received in action." *Wood* v. *United States*, 107 U. S. 414, 417. Under this act officers of twenty-five years' service at the date of their retirement, and officers who had lost an arm or leg or had an arm or leg permanently disabled, or both eyes, were not subject to be considered as retired upon the actual rank held by them when wounded, as provided in the first part of the section; and no retired officer was affected by the act who had been or might be retired on the rank actually held by him at the time of such retirement; and all officers mentioned in the first part of the section, or of twenty-five years' service, or who had lost an arm or leg, etc., could accept appointment in the diplomatic or consular service, notwithstanding § 2 of the act of March 30, 1868, or § 1223 of the Revised Statutes, as we think the words " every such officer now borne on the retired list shall be continued thereon " refer to all officers previously mentioned in the section, and the provision in this respect shows. that up to March 3, 1875, § 2 of the act of 1868 applied to officers on the retired list as well as those in active service.

Sections 1763, 1764, and 1765 of the Revised Statutes are as follows:

" Sec. 1763. No person who holds an office, the salary or annual compensation attached to which amounts to the sum of two thousand five hundred dollars, shall receive compensation for discharging the duties of any other office, unless expressly authorized by law.

" Sec. 1764. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other department; and no allowance or compensation shall be made for any extra services whatever, which any officer or

clerk may be required to perform, unless expressly authorized by law.

" Sec. 1765. No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation."

Whether by the order of the Secretary of War, July 3, 1878, the claimant's name was properly restored to the retired list we are not called upon to determine in this case, because even were that so we do not think his petition can be sustained.

General Badeau received as consul general at London an annual salary of seventy-five hundred dollars, and at Havana, of six thousand dollars, as fixed by law, and was expressly inhibited from receiving any additional salary, allowance, pay, or compensation for discharging the duties of any other office unless expressly authorized by law, of which there is no pretence in this case. It has been decided that a person holding two offices or employments under the government, when the services rendered or which might be required under them, were not incompatible, is not precluded from receiving the salary or compensation of both. *Converse* v. *United States*, 21 How. 463; *United States* v. *Brindle*, 110 U. S. 688. But the Treasury Department did not apparently regard this case as falling within that exception, and we agree with that conclusion. *United States* v. *Shoemaker*, 7 Wall. 338; *Stansbury* v. *United States*, 8 Wall. 33; *Hoyt* v. *United States*, 10 How. 109, 141.

Under the act of 1875 retired officers situated as therein described, are so far taken out of the operation of the act of 1868 as not to be held, if they accept or hold diplomatic or consular appointment, to have resigned their places in the army; but this does not change the general policy of the law, and does not entitle them to pay as army officers during the period of time when they are absent from their country in the discharge of continuous official duties inconsistent with subjection to the

rules and articles of war, and the other incidents of military service. Notwithstanding § 1223, such officers, when in the diplomatic or consular service, may still be borne on the retired list, but cannot receive double compensation.

Nor can we disturb the judgment adverse to the counterclaim. As between individuals, where money has been paid under a mistake of law, it cannot be recovered back, but it is denied that this rule is applicable to the United States, upon the ground that the government is not bound by the mistakes of its officers, whether of law or of fact. *United States* v. *Kirkpatrick*, 9 Wheat. 720; *United States* v. *Bank of Metropolis*, 15 Pet. 377; *McElrath* v. *United States*, 102 U. S. 426. But inasmuch as the claimant, if not an officer *de jure*, acted as an officer *de facto*, we are not inclined to hold that he has received money which, *ex æquo et bono*, he ought to return.

He was paid as a military officer from December 6, 1869, to the 21st of February, 1870, and for the time from February 21, 1870, to April 30, 1870, and for about fourteen months, beginning in September, 1881, and ending in November, 1882. After May 19, 1869, he was employed in a diplomatic or consular capacity, except during the above specified periods, and the implication from the findings is that he was paid for those periods, because he was actually rendering service, whether subject to assignment thereto or not.

The judgment of the Court of Claims is      *Affirmed.*

MR. JUSTICE MILLER dissented.