### UNITED STATES v. BENTLEY.

No. 62.

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1939.

or before January 1, 1925, the Secretary of War "certified" him to the Director of the Veterans' Bureau for an "adjusted service credit" of $500, upon which the Director issued to him a "certificate" for $1,246, and upon this he borrowed $623 on March 30, 1935. On November 21, 1935, the Secretary, having discovered that he had "certified" the defendant by mistake, "recertified" him for a credit of $149, and the Director reduced his "certificate" to $371. This action was brought to recover the difference, $252, between the amount borrowed, $623, and the amount of the corrected "certificate", $371. The defendant counterclaimed for $623, the unborrowed remainder of the first "certificate". The defendant does not dispute that, as a "provisional" officer, he was entitled under the statute to no more than $371; but he says that, having once "certified" him for $500, the Secretary had exhausted his powers, because of § 310 of the World War Adjusted Compensation Act, 38 U.S.C.A. § 620, which declares that the Secretary's "decisions * * * on all matters within" his jurisdiction "shall be final and conclusive". This, he argues, put the first decision, once made, beyond recall. Further, that even though this be not true, the Director lent him the money through a mistake of law—since he knew that his status was only that of a "provisional" officer—and that no recovery can be based upon such a mistake. Each side moved for a summary judgment, and the judge gave judgment against the defendant for the balance of the loan with interest, and dismissed the counterclaim. The defendant appealed.

Justin J. Doyle, of Rochester, N. Y. (Raymond Bentley, of Rochester, N. Y., of counsel), for appellant.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Goodman A. Sarachan, Asst. U. S. Atty., of Rochester, N. Y., of counsel), for the United States.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

PER CURIAM.

The defendant, a first lieutenant in a national guard regiment in New York, accepted a "provisional" commission as second lieutenant in the regular army in November, 1917, and served in it either as second or first lieutenant until June 28, 1919. On

The section has never come before a court, but its meaning seems to us plain; it was not designed to prevent review of their own decisions by the officials themselves, but to limit any review of the courts. Whether Congress could have prevented all judicial review whatever (United States v. Williams, 278 U.S. 255, 49 S.Ct. 97, 73 L. Ed. 314) is not before us. We can find no reason a priori supporting the defendant's construction. Certainly if the officials gave the veteran too little, Congress could not have meant to perpetuate the injustice by forbidding them to correct the mistake. Yet it is impossible to see why the decision, if it is not final in that situation, should be final in this. True, Congress apparently did not consider the bonus as mere gratuity, but as compensation for past services

not adequately paid at the time; but that cannot excuse allowing those who receive more than their share, to keep it. If the words must be read to mean what the defendant says, they could never have been deliberately so intended. The supposed hardship of refunding what the defendant may have spent, cannot stand against the injustice of keeping what never rightfully belonged to him at all. Those decisions upon which the defendant relies, with one exception, concern only the courts' powers of review, and are irrelevant. The exception is Butte, A. & P. Ry. Co. v. United States, 290 U.S. 127, 54 S.Ct. 108, 78 L.Ed. 222. In that case the court denied power to Interstate Commerce Commission to reverse its own order and to revoke an allowance made, paid to, and distributed by, a railroad under § 204 of the Transportation Act, 49 U.S.C.A. § 73, in reimbursement of a supposed "deficit", incurred during federal operation. This was among other things because, although the award was a bounty—in the same sense as this bonus is a bounty—the Commission had been constituted a "quasi judicial tribunal to adjudicate claims" arising under the section, (290 U.S. page 141, 54 S.Ct. page 112, 78 L.Ed. 222); and because it exercised "functions broader than those customarily conferred upon auditing or disbursing officers", sitting, as it did, "as a special tribunal to hear and determine claims presented", and rendering "a judgment upon a full hearing", (290 U.S. page 142, 54 S.Ct. page 112, 78 L.Ed. 222). Certainly there is no parallel between the action of the Commission in specific litigations of that kind and that of the Secretary of War, or the Director of the Veterans' Bureau, in passing upon hundreds of thousands of claims in a necessarily summary way and upon their own records. Theirs are indeed "functions * * * customarily conferred upon auditing or disbursing officers"; numerous mistakes are inevitable and it is inconceivable that anyone should have wished them to be indelible. We hold that the Secretary and the Director were within their powers in correcting the "certification" and the "certificate".

■ The second point is that the money was not recoverable, because it had been paid under a mistake of law. It is by no means clear just what was the mistake; the Secretary had in the War Department all the records upon which each of his decisions was made; and it is the merest assumption that he misconceived what rights the statute conferred upon a "provisional" officer. Nevertheless, we will not base our decision upon the absence of that proof; on the contrary we will assume that the mistake was one which between individuals would not have supported a recovery. The unjust and anomalous doctrine that one may not recover money paid under a mistake of law, unhappily still persists, though it is more honored in the breach than in the observance; but a well-settled exception is that payments made by the legal mistakes of officers of the United States are recoverable. United States v. Burchard, 125 U.S. 176, 180, 8 S.Ct. 832, 31 L.Ed. 662; United States v. Stahl, 151 U.S. 366, 14 S.Ct. 347, 38 L.Ed. 194; Wisconsin Central R. Co. v. United States, 164 U.S. 190, 207–212, 17 S. Ct. 45, 41 L.Ed. 399; United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932, (semble); Heidt v. United States, 5 Cir., 56 F.2d 559. The situation at bar was not like that in Badeau v. United States, 130 U.S. 439, 9 S.Ct. 579, 32 L.Ed. 997; and United States v. Royer, 268 U.S. 394, 45 S.Ct. 519, 69 L.Ed. 1011, where the claimant not only fulfilled the duties of the rank which he supposed he had, but understood at the time that he was serving for the pay which he received. For this reason it was thought inequitable to deprive him of the consideration for which he had been working. Presumably the defendant at bar got the pay of his "provisional" rank while he was in the service, and that was all that he could rightfully expect. He rendered no service upon the faith of the bonus; and, though that may have been intended, as we have said, as more than a bare gratuity, its amount was altogether matter of grace. By no possible reasoning can the defendant be said to be equitably entitled to any more than the law gave him.

■ The plaintiff asserts that it is entitled to a larger award of interest than the judge awarded, but as it did not appeal, it must be content with the judgment as entered. We see no reason to disturb the award of interest against the defendant.

Judgment affirmed.