**JOHNSTON v. UNITED STATES.**

No. 5852.

United States Court of Appeals
Fourth Circuit.

Argued April 6, 1949.

Decided June 3, 1949.

O. R. McGuire, Washington, D. C. (Ivy Lee Buchanan, Washington, D. C., on the brief), for appellant.

Cecelia Goetz, Attorney, Department of Justice, Washington, D. C. (H. G. Morison, Assistant Attorney General, George R. Humrickhouse, U. S. Attorney, Richmond, Va., George F. Foley and Paul A. Sweeney, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment entered in the United States District Court for the Eastern District of Virginia, in favor of the Government and against the defendant below, in the amount of $3,355.-00, with interest. The case presents the interesting question of the pay to which an officer of the Army who has been detailed to duty with a Government civilian agency is entitled.

The statutes which the District Court found to be controlling, 5 U.S.C.A. §§ 69, 70, Sections 1764 and 1765 of the Revised Statutes, read:

§ 69. "No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other department: and no allowance or compensation shall be made for any extra services whatever, which any

officer or clerk may be required to perform, unless expressly authorized by law. (R.S. § 1764)."

§ 70. "No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation. (R.S. § 1765)."

The appellant, a graduate of the United States Military Academy at West Point and, at the time, a Lieutenant in the United States Army, was on detached duty from the Army and was completing a law course at the Columbia University Law School when the National Industrial Recovery Act of June 16, 1933, 48 Stat. 195, became law. Prior to the completion of this law course, Army travel orders had been issued to the appellant detaching him from duty at the Law School, upon completion of the course, and directing him to proceed for duty to Fort Benning, Georgia.

During the interim, the President of the United States had appointed General Hugh S. Johnson, appellant's father, as Administrator of the National Recovery Administration, established pursuant to the Act.

At the behest of General Johnson, appellant's prior orders to Fort Benning, Georgia, were cancelled and appellant was issued amended orders directing him to proceed to Washington, D. C., and to report for duty to the Administrator of the N. R. A., appellant being detached from the Army while on such duty.

Since appellant's pay as a Lieutenant in the Army was insufficient to absorb the high cost of living in Washington, D. C., it was arranged that appellant should be paid, from the N. R. A. funds, a per diem of $5.00 for increased living expenses. The District Judge found that, prior to the commencement of these per diem payments, a verbal ruling was secured from the Comptroller General to the effect that the

N. R. A. funds could be lawfully used for this purpose. When, however, the voucher for the first of these per diem payments reached the General Accounting Office and was submitted to the Comptroller General, he disallowed the payments, stating in a written memorandum dated October 10, 1933, and addressed to the Chief of the Audit Division, as follows:

"Lieutenant Johnston not being in a travel status is not entitled to per diems in lieu of subsistence while at Washington. See Special Order 145, paragraph 27, June 23, 1933. Payment of per diem was not authorized or approved by this office. The voucher is returned and credit should be disallowed in the disbursing officer's account."

The District Judge found, further, that the appellant was not notified of this later ruling by the Comptroller General and that he accordingly continued to receive the per diem payments during the entire period from July 18, 1933, to June 30, 1935, in the aggregate sum of $3,355.00. During this period, appellant received, also, the full military pay and allowances appropriate to his rank, including rental and subsistence allowances.

Subsequent to the termination of appellant's duty with the N. R. A., he was asked to refund this $3,355.00. After his refusal of this request, the present action was instituted, resulting in a judgment below for the Government for the full amount of the payments plus interest from, approximately, the date of appellant's refusal to comply with a request for refund of that amount.

In considering the grounds upon which appellant seeks reversal of the judgment below, we note, first, one asserting a lack of jurisdiction in the courts. The Appropriation Act providing funds for carrying out the provisions of the National Industrial Recovery Act stated that the funds were to be expended "in the discretion and under the direction of the President." Act of June 16, 1933, 48 Stat. 275. And the Executive Order appointing General Johnson N. R. A. Administrator delegated to General Johnson, in very broad terms, virtually all of the authority conferred by the Act upon the President. From these

factors, appellant argues that the per diem payments to him involved an exercise of Executive discretion, and that any inquiry with respect to this exercise of discretion is a non-justiciable issue beyond the jurisdiction of the courts.

We find no merit in this contention. The principle for which appellant contends would first become applicable if the *authority* of the Administrator (or the President) to grant the subsistence allowance were beyond question. To the contrary, however, the very basis of the suit is that the payments to appellant were made without lawful authority and were received by him in violation of express statutory prohibitions. Where there is an assertion that an act of the Executive is without, or in excess of, authority, or that it is in violation of some other applicable law, the courts have jurisdiction regardless of whether or not the act involves an exercise of so-called "Executive discretion." Work v. State of Louisiana, 269 U.S. 250, 46 S.Ct. 92, 70 L.Ed. 259; Garfield v. Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L. Ed. 168; cf. Ickes v. Fox, 300 U.S. 82, 97, 57 S.Ct. 412, 81 L.Ed. 525; West v. Standard Oil Co., 278 U.S. 200, 220, 49 S.Ct. 138, 73 L.Ed. 265. We paraphrase a portion of the opinion in Garfield v. Goldsby, supra, 211 U.S. at page 262, 29 S.Ct. at page 66: In our view this case resolves itself into a question of the power of the Administrator in the premises, as confered by the acts of Congress.

There seems little doubt that Sections 1764 and 1765 of the Revised Statutes, 5 U.S.C.A. §§ 69, 70, quoted above, prohibit appellant's receiving these subsistence payments unless, for some reason, those statutes are here inapplicable. We do not construe the broad language of the Appropriation Act, to the effect that the funds were to be expended "in the discretion and under the direction of the President," as declaring inapplicable to the N. R. A. all prior laws regulating the compensation of Government personnel.

More troublesome, in this connection, is appellant's contention that certain portions of the National Industrial Recovery Act, itself, indicate that the President might disregard Revised Statutes §§ 1764, 1765, in fixing the compensation of N. R. A. personnel. Section 2(a) of the Act, 48 Stat. 195, provided:

"To effectuate the policy of this title, the President is hereby authorized to establish such agencies, to accept and utilize such voluntary and uncompensated services, to appoint, without regard to the provisions of the civil service laws, such officers and employees, and to utilize such Federal officers and employees, and, with the consent of the State, such State and local officers and employees, as he may find necessary, to prescribe their authorities, duties, responsibilities, and tenure, and, without regard to the Classification Act of 1923, as amended, to fix the compensation of any officers and employees so appointed."

By this section, the President was authorized to disregard two specific, named statutes: the civil service laws and the Classification Act of 1923, 5 U.S.C.A. § 661 et seq. The very naming of two specific statutes which might be disregarded would seem to indicate, under the maxim expressio unius est exclusio alterius, that other Federal statutes must be observed.

We note, further, the situations in which these specified statutes might be ignored. Section 2(a) of the Act, above, seemed to contemplate three classes of officers and employees: thus the President was authorized (1) "to accept and utilize" voluntary and uncompensated services (not material here), (2) "to appoint" necessary officers and employees, and (3) "to utilize such Federal officers and employees" as might be needed. In appointing officers of the second class, the President was empowered to act "without regard to the provisions of the civil service laws"; and he was authorized to disregard the Classification Act of 1923 in fixing the compensation of any officers and employees *"so appointed."* This apparently distinguished, in the matter of compensation, those appointed from those utilized; for nowhere in the Act was the President empowered to utilize for the N.R.A. existing Government personnel at compensations in disregard of any other

616

legislation. For several reasons, we do not believe Congress intended any such result.

 First, as a matter of statutory construction, no authority need be cited for the propositions that repeals by implication are not favored and that, when two acts deal with the same subject, where it is feasible to do so, they will be construed so as to give effect to both. We feel, here, that the grant to the President of the power to utilize Federal officers and employees for the N. R. A. (Section 2(a) of the National Industrial Recovery Act) and the grant to the President of discretionary power with respect to the expenditure of N. R. A. funds (Deficiency Appropriation Act of June 16, 1933, 48 Stat. 275) must both be interpreted as limited by the provisions of Sections 1764 and 1765 of the Revised Statutes.

 Second, in practice, the "discretion" in the expenditure of N. R. A. funds granted to the President by the Appropriation Act, and later vested in the Administrator by virtue of the terms of his appointment, was never considered by anyone to be absolutely without limit. Thus, prior to making the very payments in question, the Administrator sought from the Comptroller General, a ruling that the N. R. A. funds might lawfully be used for this purpose. Such a ruling would have been unnecessary had the Administrator been vested with an absolute and uncontrolled discretion with respect to these funds. Moreover, the record shows that accounts of the N. R. A. were regularly submitted to the General Accounting Office for auditing, and the General Accounting Office disallowed disbursements exactly as it did those of any other Government agency. Such a procedure is inconsistent with an unlimited discretion in the Administrator.

Third, the appellant's argument that a broad grant of discretion to the Executive will suffice to override the provisions of Sections 1764 and 1765, Revised Statutes is not new, and we are not without precedent in answering it. Almost immediately after the passage of the Act of 1839, 5 Stat. 339 (forerunner of the present § 1765), a parallel argument to circumvent its restrictions was advanced to the Attorney Gen-eral. It was urged that the discretion given the President, in an appropriation act under which Naval personnel had been employed in an exploring expedition, permitted extra pay for those men, despite the act. The Attorney General's reply, rejecting this contention, is in point here. He said:

"I must premise that the act of 1835 [4 Stat. 753] [an earlier act similar to that of 1839, held to have been temporary legislation only] and the act of 1839, so strongly declaring the sense of the legislature against the allowance by the Executive of extraordinary salaries and compensation, evidently establishes, in the interpretation of doubtful statutes, (if there were a doubt) a presumption against these, which is not to be repelled by a slight and distant inference. The implication, in any act of Congress by virtue of which the Executive shall be authorized to depart from the settled and permanent policy of these laws, must be inevitable and overruling. * * * Before the acts of 1835, 1939, etc., the Executive did exercise a very large discretion in these matters. That discretion is now, so far as salaried officers are concerned, taken away. If there be really a strong equitable claim to extraordinary allowances, it must be addressed to the discretion and indulgence of Congress." 4 Op. Attys. Gen. 128, 130, 133.

Concluding that Revised Statutes §§ 1764 and 1765 are applicable here, we need inquire only if the questioned payments were, in fact, violative of those statutes, as the Government contends.

In 1839, the Attorney General, in an opinion written for the Secretary of the Treasury, described the evil intended to be cured by these statutes "as the application of a portion of a general appropriation * * * to the payment of persons receiving salaries, pay, or emoluments fixed by law." 3 Op. Attys. Gen. 439, 440. Following the Attorney General's lead, the courts have construed the statutes as barring additional compensation in a wide variety of cases. Thus, such compensation has been denied a clerk in the Department of the Interior who, in return for a promise of more money, had gone to London at the

direction of the Secretary as an observer at an industrial exhibition, Stansbury v. United States, 8 Wall. 33, 19 L.Ed. 315; an employee of the Treasury Department for work done outside of office hours for the Department of the Interior, Woodwell v. United States, 214 U.S. 82, 29 S.Ct. 576, 53 L.Ed. 919; a supervising architect employed by the Treasury Department for services rendered the State, War and Navy Departments, Mullett v. United States, 150 U.S. 566, 14 S.Ct. 190, 37 L.Ed. 1184, and a retired Army officer serving in the diplomatic corps. Badeau v. United States, 130 U.S. 439, 9 S.Ct. 579, 32 L.Ed. 997. Other illustrative cases are Lewis v. United States, 244 U.S. 134, 37 S.Ct. 570, 61 L.Ed. 1039; United States v. Johnson, 173 U.S. 363, 19 S.Ct. 427, 43 L.Ed. 731; Gibson v. Peters, 150 U.S. 342, 14 S.Ct. 134, 37 L.Ed. 1104; United States v. King, 147 U.S. 676, 13 S.Ct. 439, 37 L.Ed. 328; Folger v. United States, 103 U.S. 30, 26 L.Ed. 364; Hall v. United States, 91 U.S. 559, 23 L.Ed. 446; Hoyt v. United States, 10 How. 109, 13 L.Ed. 348.

■ We find no merit in appellant's argument that the moneys paid him for "increased costs of subsistence" are not within the statutory prohibitions. Section 1765, Revised Statutes, bars "any additional pay, extra allowance, or compensation, *in any form whatever.*" (Italics ours.) There can be no doubt that this broad language prohibits payment of an added subsistence allowance to meet the cost of living. See 10 Op. Attys. Gen. 216, 218–219.

There has been recognized only one exception to the flat prohibition of these statutes against extra compensation. It is held not to apply where there are two distinct offices, places or employments, each of which has its own duties and its own compensation, which offices *may both be held by any one person at the same time.* United States v. Saunders, 120 U.S. 126, 7 S.Ct. 467, 30 L.Ed. 594; United States v. Brindle, 110 U.S. 688, 4 S.Ct. 180, 28 L.Ed. 286. This exception has no application here. Badeau v. United States, 130 U.S. 439, 451, 9 S.Ct. 579, 32 L.Ed. 997. The duties and responsibilities of an Army officer on active duty are clearly incompatible with those of an assistant counsel of a civilian agency. Appellant was able to hold both offices at the same time only because, in his position as an Army officer, he was detailed to discharge the duties of the civilian office. In fact, appellant discharged the duties of only one office and therefore was entitled to compensation for only one. Since that single compensation was fixed by law, he was entitled to no other. It has been suggested that, since appellant discharged the duties of the civilian office, he is entitled to retain the perquisites of that office including the subsistence allowance. A sufficient answer is that it was expressly forbidden by statute that a subsistence allowance be paid to any officer or employee of the United States stationed in the District of Columbia. 5 U.S.C.A. § 74.

Appellant bases several arguments on a consideration of possible repercussions of a decision adverse to him. Although we find these arguments without merit, due to the far-reaching nature of the principles here involved, we are disposed to answer them in some detail.

Revised Statutes § 1222, 10 U.S.C.A. § 576, provides:

"No officer of the Army on the active list shall hold any civil office, whether by election or appointment, and every such officer who accepts or exercises the functions of a civil office shall thereby cease to be an officer of the Army, and his commission shall be thereby vacated."

Appellant suggests that a holding by us that the National Industrial Recovery Act and its accompanying Appropriation Act do not constitute an exception to Revised Statutes §§ 1764 and 1765 will somehow imply a ruling that those N. R. A. statutes, similarly, do not provide an exception to Revised Statutes § 1222, just quoted. Stated otherwise, appellant fears that a decision of the instant case adverse to him may lay the basis for a ruling that he, and other officers similarly situated, forfeited their Army commissions upon accepting duty with a civilian agency. But we are in no way here concerned with appellant's status as an Army officer under Section 1222, which has not been questioned. Such a question would arise, for example, were

this a suit to recover from appellant the pay he received as an Army officer during this period. Moreover, we note that Revised Statutes § 1222 has not generally been thought to apply where a military officer has merely been detailed by his military superiors to duty with a civilian agency. 16 Op. Attys. Gen. 499; Decisions of the First Comptroller 88, 93.

Next (alternative to his contention that the N. R. A. statutes override Revised Statutes §§ 1764, 1765) appellant asserts that, if he forfeited his Army commission by accepting the civilian office, he was a de jure officer of the N. R. A. and a de facto officer of the Army, and is entitled to retain compensation received in both capacities—for which proposition he relies upon Badeau v. United States, 130 U.S. 439, 9 S.Ct. 579, 32 L.Ed. 997. His argument proceeds that when, during his tour with the N. R. A., he was promoted to First Lieutenant, he became a de facto officer of the N. R. A. and either a de facto or de jure officer of the Army and, again, is entitled to retain compensation received from each. The argument provides its own refutation; it is merely an attempt to ride both sides of the sapling. The Badeau case involved an attempt by the Government to recover of a retired Army officer his military pay received during a period when he was considered as having resigned his office by accepting appointment in the diplomatic corps in violation of Revised Statutes § 1223, 10 U.S.C.A. § 577. The Supreme Court held him entitled to retain this pay since he acted as an officer de facto if not de jure. The Badeau case is clearly distinguishable. The appellant remained an officer of the Army throughout the entire period in question, and we are therefore confronted with the simple question of whether an Army officer may receive additional compensation by virtue of being detailed to duty with another agency of the Government—a question which is clearly answered by Revised Statutes §§ 1764 and 1765.

Finally we are told that a decision adverse to appellant may be the foundation of great injustice in these days when military officers are ever more frequently being called upon to serve their country in various civilian fields. It is true that the military pay of an officer may be wholly inadequate when he is called upon to discharge the duties of a civilian office requiring great expenditures, and it is of course true that in such situation he should receive the additional allowances appurtenant to the civilian office. But we find that Congress has not been unmindful of these factors, or of the restrictive provisions of Revised Statutes §§ 1764 and 1765.

Legislation to avoid the evils which appellant fears has been frequent and falls into two main categories: public acts to deal with recurring situations and private laws to deal with the situations of particular individuals. An example of the former class is the Foreign Service Act of 1946, 60 Stat. 999, 22 U.S.C.A. § 801 et seq., wherein the Foreign Service laws were revised and codified. Congress took care to provide that, "notwithstanding the provisions of section 1765 of the Revised Statutes," the Secretary might grant to officers or employees of the Service additional allowances for quarters, cost of living and "representation," i. e., entertainment, etc., 60 Stat. 1025–1026, 22 U.S.C.A. § 1131. The same act specifically authorizes, also, payment of the same travelling expenses authorized for officers of the Foreign Service to military and naval personnel assigned the Secretary of State as couriers and inspectors of buildings. 60 Stat. 1011, 22 U.S.C.A. § 956.

Among the many private laws that might be cited are those permitting the appointments of Lieutenant General Walter B. Smith, General Omar N. Bradley and Major General Braves Blanchard Erskine as, respectively, Ambassador to Russia, Administrator of Veterans' Affairs and Retraining and Re-employment Administrator. The bill with respect to General Smith authorized him to receive the salary and allowances of the Ambassadorship "in lieu of his military pay and allowances," Private Law No. 428, 79th Cong., 2d Sess., 60 Stat. 1129, while Generals Bradley and Erskine were specifically authorized to receive in addition to their military pay and allowances the difference between the same and the salaries of the civilian offices they respectively held. Private Law No. 140, 79th Cong., 1st Sess., 59 Stat. 741; Private

Law No. 367, 79th Cong., 2d Sess., 60 Stat. 1105.

It is thus clear that where Congress has deemed it desirable to permit a military officer to receive the perquisites and emoluments of a civilian office he holds, Congress has expressly so provided. We think it equally clear that, in the absence of such provision by Congress, the payment of compensation in any form to a military officer, in addition to his military pay and allowances, is forbidden.

The judgment below is affirmed.

Affirmed.