George L. RICHARD
v.
The UNITED STATES.
No. 624–52.

United States Court of Claims.
May 1, 1956.

Mr. Samuel T. Ansell, Jr., Washington, D. C., for plaintiff. Mr. Burr Tracy Ansell, Mr. Harry E. Wood, and Ansell & Ansell, Washington, D. C., were on the briefs.

Mr. Richard E. Watson, North Kansas City, Mo., with whom was Mr. Asst. Atty. Gen. Warren E. Burger, for defendant. Mr. Laurence H. Axman was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is an action by a retired naval officer, for the difference between the active-duty and retired pay of his grade as commander from January 1, 1947, to March 31, 1952, when he attained the age of 62 years, on the ground that his retirement on January 1, 1947, was ineffective because he had not received a retiring board hearing. In the alternative plaintiff asks for the difference in pay from January 1, 1947, until August 16, 1947, on the ground that while receiving treatment in a Navy hospital he was performing active duty. Plaintiff further claims this alleged active service increased his entitlement from the retired pay of a commander with over 27 years' service and not over 30 years' service to which he would have been entitled on the basis of retirement on January 1, 1947, to the retired pay accorded officers with over 30 years' service.

The questions presented are: (1) Was plaintiff's retirement in accordance with law, and (2) if the plaintiff was retired effective January 1, 1947, did he perform active duty as a retired officer of the Navy after that date.

Plaintiff, George L. Richard, entered upon active duty as a commissioned officer in the United States Navy, on January 7, 1922, after having previously served 4 years 4 months and 6 days in the Reserves. He thereafter served continuously as a commissioned officer on the active list until December 31, 1946, when

he was retired with the rank of commander.

Sections 3, 4 and 5 of the Act of February 21, 1946, 60 Stat. 26, 27, 34 U.S. C.A. §§ 419b, 410a, provides in pertinent part for the retirement of officers of the Navy upon the recommendation of a board of officers. This statute, popularly known as the "plucking statute" provided generally for the retirement of officers who were so designated by the board on the approval by the President.

Pursuant thereto a board of officers appointed by the Secretary of the Navy was convened in Washington, D. C., on May 15, 1946, to consider, and recommend for retirement, line officers of the Navy, including plaintiff. The board recommended that plaintiff among others, be retired and the recommendation was approved by the President in June 1946.

On June 15, 1946, the Secretary of the Navy notified plaintiff of his involuntary selection for retirement by the retirement board under section 3 of the Act of February 21, 1946, supra.

On July 29, 1946, plaintiff acknowledged receipt of said notice in a letter, addressed to the Bureau of Naval Personnel, wherein he referred to the applicable law and stated that he had been informed that his services on active duty would terminate not later than January 1, 1947. Plaintiff requested that he be allowed to remain on active duty in charge of his station until December 31, 1946. This included flight duty. On September 24, 1946, plaintiff was advised that the President had approved the recommendations of the special board placing him on the retired list on January 1, 1947.

In October 1946, plaintiff, who was in command of his station, received orders dated September 30, 1946, from the Navy Department, Bureau of Personnel, which provided in pertinent part as follows:

"1. When directed by your commanding officer, you will report for a physical examination in accordance with reference (a). If hospitalization is required, you will be detached from duty and ordered to an appropriate hospital by your commanding officer, and these orders endorsed accordingly. If hospitalized, further compliance with these orders is delayed until you are ready for discharge from treatment. At that time, the medical officer in command will perform the duties of the commanding officer referred to in the balance of these orders.

" *    *    *    *    *    *

"3. When directed by your commanding officer, on 1 November 1946, you will regard yourself detached from your present duties; await orders pending retirement. You will proceed to your home. If hospitalization was required in accordance with paragraph one above, you will, upon discharge from treatment, await orders pending retirement. You will proceed to your home. You will complete all travel within one year from date of detachment; or, if under treatment, within one year from date of discharge from treatment; but not later than one year from date of retirement; * * *.

"4. Upon detachment or discharge from treatment, to await orders pending retirement, furnish the Bureau of Naval Personnel one copy and the disbursing officer carrying your pay accounts four copies of these orders bearing all endorsements. Also report your mail address and subsequent changes thereof to the Bureau of Naval Personnel (Attention Pers—325), and to the commandant of the naval district in which you reside and to the disbursing officer carrying your pay accounts. Comply also with Articles 134 and 135, Navy Regulations, 1920.

"5. During the period between date of detachment and date relieved of all active duty (date of retirement) you may, at your option, wear civilian clothes. You are authorized

to engage in any occupation not prohibited by law for military personnel.

"6. You will regard yourself relieved of all active duty in the U. S. Navy on 1 January 1947. A letter from the Secretary of the Navy formally placing you on the retired list as of that date will be forwarded to you shortly thereafter."

Plaintiff, as his own commanding officer, did not direct himself to report for a physical examination until October 28, 1946, when he went before a board of medical examiners in a nearby naval hospital in California. He was found not physically qualified for active duty, in need of hospitalization, and on October 29, 1946, was ordered to return to his duty station "for detachment and transfer to U. S. Naval Hospital, Mare Island, California".

The commanding officer of the 12th Naval District ordered plaintiff to report to the hospital not later than November 1, and to furnish to the hospital his orders of September 30, 1946. Plaintiff, as his own commanding officer, ordered himself to proceed to the hospital on November 1, 1946, which he did in accordance with his basic orders of September 30, 1946.

On November 9, 1946, after his hospitalization on November 1, 1946, it was established by diagnosis that plaintiff had a chronic arthritis which was incurred as the result of an injury to his spine some years before. Plaintiff's condition had not prevented him from remaining in command of his post, which involved flying duties, until his retirement on January 1, 1947.

After therapeutic and heat lamp treatments each day, with no immediate improvement, plaintiff on December 5, 1946, appeared before a Medical Survey Board which determined that plaintiff was unfit for service and recommended that plaintiff be ordered to appear before a retiring board. The findings and recommendations of the Medical Survey Board were transmitted to the Bureau of

Medicine and Surgery. On December 16, 1946, that Bureau recommended to the Bureau of Naval Personnel that the Board's findings be disapproved, stating that plaintiff had continued full duty status including flight duty until "recently" and that he had only been on the sick list since November 1, 1946, and that there had been no worsening in his state of health. It was recommended that he be returned to duty, despite the fact that he had already been "plucked" for retirement as of January 1, 1947. On January 1, 1947, plaintiff was retired and his name was transferred to the retired list. On January 9, 1947, the findings and recommendations of the Bureau of Medicine and Surgery as to plaintiff, were marked "Preceding endorsement * * * approved," by the Chief of Naval Personnel.

Following this action by the Chief of Naval Personnel plaintiff was retained as a patient at the Mare Island Naval Hospital for further treatment because his "symptoms continued unabated".

Between January 1, 1947, and August 28, 1947, plaintiff appeared before several Medical Survey Boards for checkups. On April 17, 1947, it was found that his arthritic condition persisted and the Board recommended that plaintiff be retained for further treatment.

On August 11, 1947, after plaintiff again appeared before the Medical Survey Board, it was found that he was fit for duty, and the Board recommended that he be returned to duty. Plaintiff, so informed, submitted a signed "statement of rebuttal" in which he requested that he be permitted to appear before a naval retiring board. This was the first time plaintiff had ever made such request, having waived his right to a retiring board hearing in December 1946 prior to retirement. On August 22, 1947, the findings and recommendation of the Board of Medical Survey of August 11, 1947, together with the plaintiff's statement in rebuttal, were transmitted to the Bureau of Medicine and Surgery, and on the 29th of August 1947 such Bureau approved the Board's recommendation

that plaintiff be restored to duty. This was in turn forwarded to the Bureau of Naval Personnel which on September 15, 1947, approved the findings and recommendation of the Medical Board. Plaintiff's request to appear before a naval retiring board was never acted upon.

On August 15, 1947, the medical officer in command at Mare Island Naval Hospital telegraphed the Bureau of Naval Personnel that plaintiff had been found fit for duty with a recommendation that he be returned to duty and request was made for authority to carry out plaintiff's orders of September 30, 1946. On August 19, 1947, the Bureau of Naval Personnel, by direction of its Chief, in response to the foregoing request of August 15, 1947, wrote the medical officer in command as follows:

"2. Under the operation of reference (b) [the Act of February 21, 1946] subject officer was recommended for retirement, which was to become effective not later than 1 January 1947. He was subsequently notified that he would not be retained on active duty after 1 January 1947; his separation orders stated unequivocally that he would regard himself relieved of all active duty on 1 January 1947. In view thereof, Commander Richard is not entitled to active duty pay or allowances subsequent to 1 January 1947.

"3. Examination of this officer's record on file in the Department reveals that his final retirement letter [of January 2, 1947] was not received by him * * *. The letter is accordingly forwarded for delivery to Commander Richard in order that he may take appropriate action in connection with establishing his retired pay status."

On August 26, 1947, after receipt of the foregoing letter, the medical officer in command at Mare Island delivered to plaintiff a copy of the letter addressed to plaintiff, dated January 2, 1947, advising him that he had been placed on the retired list. On August 28, 1947, plaintiff was discharged from hospitalization and treatment and directed to comply with the orders of September 30, 1946.

The retirement letter of January 2, 1947, is in pertinent part as follows:

"1. The President of the United States having approved the recommendation of a special Board, appointed by me, you were on 1 January 1947 transferred to the retired list. I have determined that your performance of duty in the rank of Commander under a temporary appointment has been satisfactory. Accordingly, you were transferred to the retired list with the rank of Commander and with the retired pay of that rank, pursuant to the provisions of U.S.Code, Title 34, Sections 410a and 410c.

"* * * * * *

"3. Acknowledgment of receipt is requested."

Plaintiff claimed that his first formal notice that he had been retired effective January 1, 1947, was his receipt on August 26, 1947, of a copy of the notice of his retirement dated January 2, 1947. However, as shown above, there were a series of notices that he received during the year 1946 which clearly showed that he would be retired on January 1, 1947.

Through error plaintiff, who was retired by operation of the statute on January 1, 1947, was paid active-duty pay from the date he went into the hospital on July 1, 1946, to August 16, 1947, at the rate of his grade of a commander with over 27 years' service and not over 30 years' service.

Plaintiff was subsequently charged $2,378.21 as an overpayment, being the difference between active-duty pay and the retired pay of his rank, which amount was collected by stoppage of retired pay until the entire amount was recovered. Plaintiff requested reexamination of his status but the Chief of Naval Personnel on review denied plaintiff's application as did the Board for Correction of Naval Records.

On August 28, 1947, in a letter to the Chief of Naval Personnel, plaintiff requested that either his status of active duty be extended to August 26, 1947, or that he be recalled to active duty as a retired officer as of 1 January 1947. The Chief of Naval Personnel denied the request pointing out *inter alia* that the language of paragraph 1 of his orders of September 30, 1946, regarding delay in compliance with the orders until ready for discharge from treatment, referred only to his proceeding home, and did not change the effective date of retirement as stated later in the same orders. After a documentary review of plaintiff's naval record, the Board for Correction of Naval Records on June 21, 1948, found no error or injustice in the record and concluded that no change should be made therein.

Plaintiff later, in the early part of 1952, requested review by the Board for Correction of Naval Records which again sustained its conclusion adverse to plaintiff.

Plaintiff contends that his purported retirement on January 1, 1947, was illegal because he had not been afforded an opportunity to appear before a retiring board in accordance with section 1455, Rev.Stat., 34 U.S.C.A. § 412, and therefore he was deemed to be in an active-duty status until he reached the retirement age of 62 years.

Section 1455, Rev.Stat., provides:

"No officer of the Navy shall be retired from active service, or wholly retired from the service, without a full and fair hearing before such Navy retiring-board, if he shall demand it, except in cases where he may be retired by the President at his own request, or on account of age or length of service, or on account of his failure to be recommended by an examining board for promotion."

Defendant contends that plaintiff was effectively retired January 1, 1947, under the Act of February 21, 1946, supra. This statute, known as the "plucking statute" provided for the retirement of officers who were so designated by a board of officers on the approval by the President. Section 5 of the above statute provides:

"Each officer recommended for retirement pursuant to this Act shall, if such recommendation be approved by the President, be placed on the retired list on the first day of such month as may be set by the Secretary of the Navy but not later than the first day of the seventh month after the date of approval by the President."

The defendant further contends that after January 1, 1947, plaintiff was entitled and did receive retired pay, and the active-duty pay which he drew up to August 1947 was properly checked against him.

Pursuant to the "plucking statute" plaintiff was recommended for retirement by a duly constituted board appointed by the Secretary of the Navy for the purpose of picking officers for retirement from among those who had not been promoted as described in the aforementioned statute. This action of the board was approved by the President in June of 1946. The only possible administrative error in plaintiff's retirement was his failure to get the retirement letter of January 2, 1947. However, as shown by the findings, the letter was sent to the address furnished by plaintiff and carried on the naval records. Furthermore, on June 15, 1946, the Secretary of the Navy notified plaintiff of his involuntary selection for retirement by the retirement board under the Act of February 21, 1946, supra. On July 29, 1946, plaintiff acknowledged receipt of said notice by letter in which he stated that he had been informed that his services on active duty would terminate not later than January 1, 1947. On September 24, 1946, the defendant notified plaintiff that the President had approved the recommendations of the special board placing him on the retired list of officers of the Navy on January 1, 1947. Thus there can be no

question as to plaintiff's knowledge that this action had been taken. Moreover, the direction to report for physical examination and the fact that he did so report further bears out knowledge on the part of plaintiff.

Following January 1, 1947, the statutory date for plaintiff's retirement, there remained nothing to be done to make his retirement an accomplished fact. Greenwald v. United States, 88 Ct.Cl. 264.

■ The only question then is whether section 1455, Rev.Stat., has the force attributed to it by plaintiff; i. e., is a hearing before the Navy retiring board mandatory before an officer can be retired under the "plucking statute."

While it is highly doubtful that section 1455, Rev.Stat., has this force,[1] the later act (plucking statute) would supersede the earlier. Nothing is contained in the "plucking statute" guaranteeing the right to appear before a Navy retiring board. Furthermore, section 1455, Rev.Stat., supra, provides that no officer be retired from the service, without a full and fair hearing before a retiring board *if he shall demand it*. We can find nothing in the record that indicates a demand was ever made by plaintiff until August 11, 1947, more than eight months after the date fixed for his retirement. We believe this request was not timely made. As a matter of fact, plaintiff did not want retirement at that time. He had much to gain by seeking to prolong his active-duty status. This is demonstrated by his formal application of August 28, 1947, asking that his active-duty status be extended to August 26, 1947, or that he be recalled from retirement status to active duty as of January 1, 1947 (retroactively). Furthermore, plaintiff appeared before a Board of Medical Survey on December 5, 1946. In the record of the hearing before the Board there appears the statement "In the event he is ordered to appear before a Naval Retiring Board, he waives the right to appear before such Board."

On the trial of this case plaintiff stated he did not think it was necessary for him to go before a retiring board and did not in any way challenge or deny the statement in the medical survey report. Therefore, if plaintiff had a right to demand and receive a hearing before a Navy retiring board, he not only failed to make a timely demand, but waived any rights he might have had.

■ If plaintiff is entitled to anything, it is as a *de facto* active-duty officer, but as he performed no duty after he went to the hospital on November 1, 1946, he could not qualify as a *de facto* active-duty officer. During plaintiff's stay in the hospital, which was pursuant to his own orders, he was permitted to go and come at will and only when he intended to be gone for protracted periods did he apply for leave to the commanding officer of the hospital. Moreover, on the orders of the commanding officer, Naval Air Base, 12th Naval District, Alameda, California, plaintiff turned over his duties to the next senior officer.

■■ It is well settled that in the absence of orders definitely assigning one to active duty after retirement, active-duty pay ceases on the date an officer is placed on the retirement list. Terry v. United States, 81 Ct.Cl. 958; Holland v. United States, 83 Ct.Cl. 376. It has also been held that to be paid for active duty an officer must actually perform services calling for such payment. Morrow v. United States, 65 Ct.Cl. 35.

■ Absent actual performance of services and orders to active duty after retirement, the medical officer of the naval hospital was in error when he continued to issue vouchers for plaintiff's active-duty pay while plaintiff was undergoing treatment, and the Secretary of the Navy was correct in collecting from plaintiff the "overpayment."

In United States v. Bentley, 2 Cir., 107 F.2d 382, 384, the Court stated:

1. Denby v. Berry, 263 U.S. 29.

"* * * but a well-settled exception is that payments made by the legal mistakes of officers of the United States are recoverable. United States v. Burchard, 125 U.S. 176, 180, 8 S.Ct. 832, 31 L.Ed. 662; United States v. Stahl, 151 U.S. 366, 14 S.Ct. 347, 38 L.Ed. 194; Wisconsin Central R. Co. v. United States, 164 U.S. 190, 207–212, 17 S.Ct. 45, 41 L.Ed. 399; United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932, (semble); Heidt v. United States, 5 Cir., 56 F.2d 559. The situation at bar was not like that in Badeau v. United States, 130 U.S. 439, 9 S.Ct. 579, 32 L.Ed. 997; and United States v. Royer, 268 U.S. 394, 45 S.Ct. 519, 69 L.Ed. 1011, where the claimant not only fulfilled the duties of the rank which he supposed he had, but understood at the time that he was serving for the pay which he received. For this reason it was thought inequitable to deprive him of the consideration for which he had been working. * * *"

The Board for the Correction of Naval Records refused plaintiff's contention and sustained the action which resulted in plaintiff's placement on the retired list as of January 1, 1947, and refused plaintiff's request that his status of active duty be extended to August 26, 1947, the day he left the hospital, or that he be recalled to active duty as a retired officer as of January 1, 1947.

■ There is no allegation in the petition that this Board was arbitrary in its decision. In the absence thereof, this court will not review the decision, and the decision of the Board must therefore stand. Wales v. United States, 130 F.Supp. 900, 132 Ct.Cl. 765; Gordon v. United States, 121 F.Supp. 625, 129 Ct.Cl. 270.

For the foregoing reasons plaintiff is not entitled to recover, and his petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.